Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
Gabrielle A. Hamm, Esq.
Nevada Bar No. 11588
ghamm@nvfirm.com
Athanasios Agelakopoulos, Esq.
Nevada Bar. No. 14339
aagelakopoulos@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, Nevada 89101
Telephone: (702) 385-5544
Facsimile: (702) 442-9887

Kenneth J. Ottaviano (*pro hac vice* forthcoming)
William J. Dorsey (*pro hac vice* forthcoming)
Stephanie K. Hor-Chen (*pro hac vice* forthcoming)
BLANK ROME LLP
444 West Lake Street, Suite 1650
Chicago, IL 60606
Telephone: (312) 776-2514
ken.ottaviano@blankrome.com
william.dorsey@blankrome.com
stephanie.horchen@blankrome.com

*Counsel to Aequum Capital Financial II LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>COLORART, LLC,<br><br>Debtor. | Case No.: 25-16701-NMC<br><br>Chapter 11<br><br>**AEQUUM CAPITAL FINANCIAL II LLC'S MOTION TO PROHIBIT USE OF CASH COLLATERAL**<br><br>**OST REQUESTED**<br>**OST REQUESTED** |

Aequum Capital Financial II LLC ("<u>Lender</u>") through its undersigned counsel, hereby requests entry of an order prohibiting the use of Cash Collateral (as defined below), and represents as follows:

**PRELIMINARY STATEMENT**

1. This Chapter 11 Case is the epitome of a bad faith filing by the Debtor's principal, Eran Salu ("Salu"), and part of an ongoing fraudulent scheme to convert Lender's cash collateral. Salu filed these bankruptcy cases only after a receiver was appointed in Missouri to run Debtor's business after ***Salu admitted under oath to diverting $5.2 million from Debtor's controlled account***. Despite repeated demands, Debtor refused to cooperate with Lender or the court-appointed receiver to identify employees, produce accounts receivable aging reports and other basic financials, or even substantiate that Debtor continue to operate any business whatsoever.

2. Notably, the Debtor has not filed any of the customary "first day" motions typically used to seek authority to take essential actions necessary to stabilize operations, reassure employees and vendors, fund business operations, and preserve business value during the transition into bankruptcy. This omission underscores that these cases are not genuine reorganizations, but rather another scheme of Salu to hold Lender's collateral hostage – if not diminish it entirely – for as long as possible. This value-destructive behavior must be stopped.

3. Lender is the senior secured lender to Debtor and is currently owed in excess of $26 million on a defaulted loan. Prior to the Petition Date, in addition to myriad payment, reporting, and covenant defaults, Lender learned that Debtor had engaged in a scheme to vastly overstate the value of the collateral for this asset-based loan, locked Lender out of any ability to independently verify the value and extent of its collateral, and have *admitted* that Debtor, under Salu's direction, diverted at least $5.2 million. Despite Lender moving for, and despite a state court in Missouri granting the appointment of a receiver of and over Debtor and its assets, Salu continues to systematically divert Debtor's cash and receivables away from Lender, in complete contravention of the Loan Documents, the Receivership Order (as defined below), and now, the Bankruptcy Code.

4. Despite the protections afforded to Lender by the Bankruptcy Code, Lender remains concerned about the continued dissipation of its cash, and therefore, seeks the entry of an order, substantially in the form attached hereto as **Exhibit 1**, prohibiting the use of its Cash Collateral (as defined in Section 363(a) of the Bankruptcy Code) without Lender's consent and requiring the Debtor to sequester, segregate, and account for all Cash Collateral. Lender will also be moving for

2

the immediate appointment of a trustee.  Salu is unfit to operate these businesses.

## JURISDICTION

5. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. section 157(b).

6. Venue of the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory predicates for the relief requested herein are §§ 105 and 363 of the Bankruptcy Code and related Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

8. Lender consents to the entry of final orders and judgments before the Bankruptcy Court in accordance with Local Rul 9014.2.

## BACKGROUND

A. *The Credit Facility*

9. Debtor is a commercial printing and marketing business ultimately owned by JAL Equity Corp., which is 100% owned by Salu. Pursuant to that certain Credit and Security Agreement, dated as of June 6, 2024 (as may be amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement", and collectively with the other agreements executed in connection therewith, the "Loan Documents"), by and among Debtor and Lender, Lender provided a revolving credit facility (the "Credit Facility") with a principal amount of up to $30 million.

10. As security for payment of the loans, Debtor granted Lender a continuing security interest in substantially all of Debtor's assets (the "Collateral").  All cash of Debtor, wherever located, represents either proceeds of loans from Lender or proceeds of the Collateral.  Lender has valid, duly perfected, first-priority liens upon and security interest in and to all of the cash of the Debtor, and these funds, along with the proceeds of the ABL Senior Collateral, constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code (all such cash, cash proceeds, and other "cash collateral", the "Cash Collateral") of Lender.

B. *Debtor's Defaults Under the Credit Agreement and the Appointment of the Receiver*

11. As a result of numerous defaults under the Credit Agreement, and evidence that Debtor was converting Lender's Collateral, on October 7, 2025, Lender commenced an action

against Debtor and Salu in the Circuit Court of St. Louis County, Missouri (the "Receivership Court"), in the case captioned *Aequum Capital Financial II LLC v. ColorArt LLC, et al.*, 25SL-CC11027 (the "Receivership Proceeding") seeking, *inter alia*, the appointment of a receiver over Debtor.

12. At the evidentiary hearing on Lender's emergency motion for appointment of a receiver held before the Receivership Court on October 20, 2025, Salu admitted under oath, among other things, that: (a) he was directing the ongoing diversion of the Lender's Cash Collateral to the tune of approximately $5.2 million in the 30 days preceding such hearing, (b) he was using a previously undisclosed, unauthorized bank account (the "CNB Account") at CNB St. Louis Bank to funnel the diverted Cash Collateral, and (c) he and other members of management were continuing to use Lender's diverted Cash Collateral to pay vendors and payroll. The following excerpts from the hearing transcript further illustrate Mr. Salu's admissions and the scope of the ongoing diversion:

> Q. (By Mr. Dorsey) You said you collected about seven million dollars total since September 15th, right?
>
> A. (By Mr. Salu) Not me personally, but they've collected about two million, and we've collected about five million.
>
> Q. [The Lender] testified that they received about 1.5 million dollars on the loan. You guys got five and a half million, right?
>
> A. We received about five and a half, and we think – we received about 5.2 or something, and I believe they received close to two. I also see the Wells Fargo account.
>
> Q. Does 5.2 million dollars that you diverted from the Wells Fargo account to another account over which this lender does not have a Deposit Account Control Agreement, right?
>
> A. Absolutely not. It's within a ColorArt account used for ColorArt. It was only after they defaulted on their obligation to fund.
>
> Q. You get to decide if there has been a default, and you decide what happens to the money?
>
> A. I think we were justified because otherwise we would have failed the customers, we would have fired the employees, and it would have decreased their collateral position. It was a loss/loss for

everybody.

Q. And you made a decision to make [the Lender] lose?

…

Q. You said it was a lose/lose situation, and you were the one who decided to make [the Lender] lose by diverting their cash from the account over which they has an Account Control Agreement to one where they didn't, correct?

A. They didn't fund draws that they were obligated to fund. And so in order to mitigate damages we did move the money to another ColorArt account. We knew that, of course, one day somebody would look and see that we only spent this on the ColorArt business, but we had no choice. The other choice was to fail the customers, fire the employees, and it would demolish, like the five million dollar Macy's billing wouldn't have happened if we did that.

(Oct. 20, 2025 Hr'g Tr. 166:4 – 167:18.)

13. On October 29, 2025, the Receivership Court granted Lender's motion, denied the Debtor counter motions to stay the emergency receivership and dismiss the case, and entered an order appointing NMBL Strategies as the receiver (the "Receiver") of and over Debtor and any and all of their assets (the "Receivership Order").

**ARGUMENT**

**I.    Lender Does Not Consent to the Use of Cash Collateral.**

14. The Bankruptcy Code imposes an unequivocal prohibition: a debtor may not use Cash Collateral without the express consent of each entity holding an interest in such collateral or a court order entered after notice and a hearing. 11 U.S.C. § 363(c)(2). The statute is mandatory, not permissive. *See, id*. Moreover, under section 363(e), the court may authorize such use only if every entity with an interest in the cash collateral is "adequately protected." *Id.* at § 363(e) (providing that, upon request, the court "shall prohibit or condition such use … as is necessary to provide adequate protection of such interest"). The burden of compliance rests squarely on the debtor; the law affords no grace for gamesmanship or disregard of secured creditors' rights.

15. Lender *does not consent* to the use of Cash Collateral under any circumstance. Any unauthorized use would constitute a clear violation of sections 363(c)(2) and (e) and an intentional

5

infringement of Lender's property interests.

16. Even if the Debtors sought to use Cash Collateral without consent, they bear the heavy burden of proving that the Lender's interests in the Cash Collateral are "adequately protected." 11 U.S.C. § 363(p)(1). The Bankruptcy Code sets forth three specific means to establish adequate protection—cash payments, additional liens, or the "indubitable equivalent" of the creditor's interest. 11 U.S.C. § 361. Adequate protection is a constitutional safeguard rooted in the Fifth Amendment's protection against uncompensated takings. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 339 (1977) ("The concept is derived from the fifth amendment protection of property interests."). Its purpose is to ensure that a secured creditor's interest, valued as of the petition date, is fully preserved. *See United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 370 (1988). As the Ninth Circuit Bankruptcy Appellate Panel has made clear, the chief aim of adequate protection is to provide secured creditors, as nearly as possible under the circumstances of the case, with the value of their bargained-for rights. *See Sec. Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC)*, 314 B.R. 436, 440 (B.A.P. 9th Cir. 2004). Whether protection is adequate "depends directly on how effectively it compensates the secured creditor for loss of value" resulting from the debtor's use of the collateral. *In re Am. Mariner Indus., Inc.*, 734 F.2d 426, 432 (9th Cir. 1984). The Debtor has neither sought to provide nor could establish any form of adequate protection in these circumstances to justify non-consensual use.

17. Section 363(c)(4) independently mandates that a debtor "shall segregate and account for" all cash collateral. 11 U.S.C. § 363(c)(4); *see Scottsdale Medical Pavilion v. Mutual Benefit Life Ins. Co. (In re Scottsdale Medical Pavilion)*, 159 B.R. 295, 302 (B.A.P. 9th Cir. 1993), *aff'd*, 52 F.3d 244 (9th Cir. 1995) (ruling that chapter 11 debtors are automatically required upon filing to segregate and account for cash collateral).

18. Here, immediate remedial relief is necessary to safeguard the Lender's rights and to prevent the continued dissipation of its collateral. Use of cash collateral will materially and adversely impact Lender's overall collateral position. Debtor has admitted to the prior diversion and misuse of Lender's collateral, including cash collateral, demonstrating that Lender's collateral has already been improperly dissipated. Given this admitted diversion, Lender has no basis to

believe that Debtor will refrain from further misuse of Lender's collateral or that Debtor is capable of maintaining the integrity of the collateral, including cash collateral, during the pendency of these cases.

## **CONCLUSION**

For the foregoing reasons, Lender respectfully requests that this Court enter an order, (i) prohibiting the use of Cash Collateral, (b) directing the Debtor to segregate and account for all Cash Collateral, and (c) granting any other and further relief as is just and necessary.

| | | |
|---|---|---|
| Dated: November 7, 2025 | | /s/ Samuel A. Schwartz |

Samuel A. Schwartz, Esq.
Gabrielle A. Hamm, Esq.
**SCHWARTZ LAW, PLLC**
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: (702) 802-2207
saschwartz@nvfirm.com
ghamm@nvfirm.com

-and-

Kenneth J. Ottaviano (*pro hac vice* forthcoming)
William J. Dorsey (*pro hac vice* forthcoming)
Stephanie K. Hor-Chen (*pro hac vice* forthcoming)
444 West Lake Street, Suite 1650
Chicago, IL 60606
Telephone: (312) 776-2514
ken.ottaviano@blankrome.com
william.dorsey@blankrome.com
stephanie.horchen@blankrome.com

*Attorneys for Aequum Capital Financial II LLC*

1

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
Gabrielle A. Hamm, Esq.
Nevada Bar No. 11588
ghamm@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, Nevada  89101
Telephone: (702) 385-5544
Facsimile: (702) 442-9887

Kenneth J. Ottaviano (*pro hac vice* forthcoming)
William J. Dorsey (*pro hac vice* forthcoming)
Stephanie K. Hor-Chen (*pro hac vice* forthcoming)
BLANK ROME LLP
444 West Lake Street, Suite 1650
Chicago, IL 60606
Telephone: (312) 776-2514
ken.ottaviano@blankrome.com
william.dorsey@blankrome.com
stephanie.horchen@blankrome.com

*Counsel to Aequum Financial Capital II LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>COLORART, LLC.,<br>            Debtor. | Case No.: 25-16701-NMC<br>Chapter 11 |

**ORDER PROHIBITING THE USE OF CASH COLLATERAL**

Upon *Aequum Capital Financial II LLC's Motion to Prohibit Use of Cash Collateral* (the "Motion"), and this Court having jurisdiction to consider the Motion and the relief requested therein

1

pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and upon consideration of the record of the Chapter 11 Case; and due and sufficient notice of the Motion having been given under the circumstances; and it appearing that no other or further notice need be provided; and after due deliberation, and good and sufficient cause appearing therefor, **IT IS HEREBY ORDERED**:

1. The Motion is **GRANTED** as set forth herein.

2. The Debtor is prohibited from using the Cash Collateral absent further order from this Court.

3. The Debtor is ordered to segregate, and account for all Cash Collateral in accordance with section 364(c)(4) of the Bankruptcy Code.

4. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

5. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**IT IS SO ORDERED.**

Prepared and submitted by:

SCHWARTZ LAW, PLLC

By: /s/ *Samuel A. Schwartz*
Samuel A. Schwartz, Esq.
Gabrielle A. Hamm, Esq.
601 East Bridger Avenue
Las Vegas, NV 89101

**LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐ The court has waived the requirement set forth in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☐ I have delivered a copy of this proposed order to all counsel and any unrepresented parties who appeared at the hearing, except those as to whom review was waived on the record at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of this order.

###