GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
E-mail: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000
[Proposed] *Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>COLORART, LLC,<br><br>Debtor. | Case No.: 25-16701-nmc<br><br>Chapter 11<br><br>Date: ***OST Requested***<br>Time: ***OST Requested*** |

**EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS: (I) APPROVING THE PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT TO UTILITY PROVIDERS, (II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY PROVIDERS, AND (III) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICES**

Las Vegas Color Graphics, Inc. ("LVCG") and ColorArt, LLC ("ColorArt"; together with LVCG, the "Debtors"), as debtors and debtors-in-possession in the above-captioned Chapter 11 Cases, by and through proposed general bankruptcy counsel, the law firm Garman Turner Gordon LLP, hereby submit the *Emergency Motion for Entry of Interim and Final Orders: (I) Approving the Proposed Form of Adequate Assurance of Payment to Utility Providers, (II) Establishing Procedures for Resolving Objections By Utility Providers, and (III) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Utility Services* (the "Motion").[1]  The Motion requests

---
[1] All references to "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to "Rule" or "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references

entry of orders substantially in the form attached hereto as **Exhibits 1** (the "Interim Order") **and 2** (the "Final Order"; collectively with the Interim Order, the "Orders") granting the relief requested herein. Through this Motion, the Debtors seek, pursuant to Sections 366 and 105(a), entry of the Orders (a) approving Debtors' proposed form of adequate assurance of payment to Utility Providers (as defined herein *infra*); (b) establishing procedures for resolving any requests for additional assurance by Utility Providers; and (c) prohibiting Utility Providers from altering, refusing, or discontinuing utility services to, or discriminating against, either of the Debtors on account of any outstanding amount for services rendered prepetition or any perceived inadequacy of the Debtors' proposed adequate assurance pending entry of the Order and in the absence of any further order of the Court.

This Motion is made and based upon the Memorandum of Points and Authorities herein; the *Omnibus Declaration of Eran Salu in Support of Chapter 11 Petitions and First Day Motion* (the "Omnibus Decl.") filed concurrently herewith; the papers and pleadings on file in the Chapter 11 Cases, judicial notice of which is hereby respectfully requested pursuant to FED. R. EVID. 201(b) and (c) and 1101(a) and (b); and the argument of counsel at hearing on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Preserving utility services on an uninterrupted basis is essential to the Debtors' ongoing operations and, therefore, to the success of the Chapter 11 Cases. Any interruption of utility services, even for a brief period of time, would disrupt Debtors' ability to operate, thereby negatively affecting customer relationships and resulting revenues. Such a result could jeopardize Debtors' reorganization efforts and, ultimately, the value of Debtors' assets. Additionally, a failure by the Debtors to maintain utility service may result in the inability to fulfill customer orders; thereby potentially causing administrative liability under the Shared Services Agreement as the Debtor(s) may not be able to ultimately meet financial obligations thereunder. It is therefore

---

to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Nevada.

critical that utility services continue uninterrupted during these Chapter 11 Cases.

## II.
## BACKGROUND

1. On November 5, 2025 ("Petition Date"), each of the Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code, thereby commencing the Debtors' bankruptcy cases (together, the "Chapter 11 Cases"). *See, e.g.*, ECF No. 1.

2. A detailed description surrounding the facts and circumstances of these Chapter 11 Cases is set forth in the Omnibus Decl. filed contemporaneously herewith and incorporated by herein by this reference.

## III.
## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 1001(b)(1). This Motion is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (M), and (O). Venue of Debtors' Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a "core proceeding" over which the Court has jurisdiction to render a decision.

4. Debtors continue to operate their business and manage their property as debtors and debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5. No request has been made for the appointment of a trustee or examiner, and no official committees have been appointed in these Chapter 11 Cases.

6. The statutory bases for the relief requested herein are Sections 366, 1107, 1108, and 105 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

7. Pursuant to Local Rule 9014.2, Debtors consent to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

/ / /

# IV.
# RELIEF REQUESTED

8.  In the ordinary course of business, Debtors incur utility expenses for electricity, gas, water, internet, telecommunications, and waste services.  These utility services are provided by the utilities (as such term is used in Section 366, collectively, the "Utility Providers") including, but not limited to those listed on **Exhibit 3** attached hereto (the "Utility Service List").[2]  *See* Omnibus Decl. ¶ 74.

9.  On average, Debtors spend approximately $158,348.37 each month on utilities costs.[3]  As of the Petition Date, Debtors believe that they are substantially current on payments to Utility Providers that came due on or before the Petition Date.  *See* Omnibus Decl. ¶ 76.

10.  Preserving utility services on an uninterrupted basis is essential to Debtors' ongoing operations and, therefore, to the success of the Chapter 11 Cases.  Any interruption of utility services, even for a brief period of time, would disrupt Debtors' ability to continue operating, thereby negatively affecting revenue.  Such a result could jeopardize Debtors' reorganization efforts and, ultimately, the value of Debtors' assets.  It is therefore critical that utility services continue uninterrupted during the Chapter 11 Cases.  *See* Omnibus Decl. ¶ 77.

11.  Debtors intend to pay all valid post-petition obligations owed to the Utility Providers in a timely manner.  If permitted to utilize the cash in their Deposit Accounts and from their Post-Petition Revenues, Debtors have sufficient funds to pay post-petition obligations to Utility Providers.  *See* Omnibus Decl. ¶ 79

12.  Notwithstanding evidence of Debtors' ability to pay post-petition obligations to Utility Providers, if a Utility Provider is not satisfied that it has received adequate assurance of

---

[2] Although Debtors believe that the Utility Service List includes all of the Utility Providers, Debtors reserve the right, without the need for further order of the Court, to supplement the Utility Service List in the event Debtors discover any Utility Provider omitted therefrom.  Additionally, the listing of an entity on the Utility Service List is not an admission that such entity is a "utility" within the meaning of Section 366, and Debtors reserve the right to contest any such characterization in the future.  To the extent any of the Utility Providers identified on the Utility Service List provide direct services to a non-Debtor entity or person not subject of the Shared Services Agreement, Debtors do not anticipate that the Procedures set forth in this Motion would apply. *See* Omnibus Decl. ¶ 80.

[3] To calculate the approximate monthly expenditure for utilities costs, Debtors determined an average cost per month based on actual costs over a preceding six-month period.  *See* Omnibus Decl. ¶ 82.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000

future payment, Debtors propose the following procedures (the "Procedures") under which the Utility Provider may make additional requests for adequate assurance:

   a. If a Utility Provider is not satisfied with the assurance of future payment provided by the Debtors, the Utility Provider shall serve a written request setting forth the location(s) for which utility services are provided, the account number(s) for such location(s), the outstanding balance for each account, and a summary of Debtors' payment history for the eighteen (18) months prior to the Petition Date in each account (altogether, a "Request").

   b. The Request shall be served simultaneously upon the Debtors and Debtors' general bankruptcy counsel Garman Turner Gordon LLP so that the Request is actually received on or before the thirtieth (30th) calendar day following the date of entry of the Interim Order granting this Motion (the "Request Deadline").

   c. Without further order of the Court, Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving a timely Request if either of the Debtors, in their sole discretion, determine that the Request is reasonable, or if the parties negotiate and agree to alternate consensual provisions.

   d. In the event either of the Debtors in their sole and absolute discretion finds a Request to be unreasonable, the Debtors shall file a motion pursuant to Section 366(c) (a "Determination Motion") on or before the thirtieth (30th) calendar day following the Request Deadline.[4] The Determination Motion shall seek a determination from this Court that the continued payments constitute adequate assurance of payment. Pending notice and a hearing on the Determination Motion, the Utility Provider that is the subject of a Determination Motion may not alter, refuse, or discontinue services to either of the Debtors, or recover or set off against any prepetition deposit of either of the Debtors.

   e. Any Utility Provider that fails to make a timely Request shall be deemed to be satisfied that Debtors' ability to make post-petition payments provides adequate assurance of

---

[4] The calculation of the deadline for the Debtors to file a Determination Motion shall be determined in accord with Rule 9006.

payment to such Utility Provider within the meaning of Section 366, and such Utility Provider shall further be deemed to have waived any right to seek additional adequate assurance during the course of the Chapter 11 Cases.

13. To the extent either of the Debtors subsequently identify additional providers of utilities, the Debtors seeks authority, in either of their sole discretion, to amend the Utility Service List to add or remove any Utility Provider. For those Utility Providers that are subsequently added to the Utility Service List, Debtors will serve a copy of this Motion, along with the applicable portion of the amended Utility Service List and any order entered in connection with this Motion, on that Utility Provider (the "<u>Additional Service</u>"). To the extent any subsequently added Utility Provider is not satisfied with the assurance of future payment provided by the Debtors, the subsequently added Utility Provider shall file a Request, in conformity with the Procedures set forth herein and as approved by any Order granting this Motion, on or before the thirtieth (30th) calendar day[5] of the Debtors effecting the Additional Service. Upon Debtors' effectuation of the Additional Service, any subsequently added Utility Provider shall be subject to the Procedures herein (as approved by any Order granting this Motion).

14. Debtors further request that all Utility Providers, including subsequently added Utility Providers, be prohibited from altering, refusing, or discontinuing utility services to, or discriminating against, the Debtors on account of any outstanding amount for services rendered prepetition or any perceived inadequacy of the Debtors' proposed adequate assurance absent any further order of this Court.

## V.
## BASIS FOR RELIEF REQUESTED

Section 366(c)(2) specifically addresses utility services to a Chapter 11 debtor and provides:

> Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from

---

[5] All days in the Procedures counted in accord with Bankruptcy Rule 9006.

> the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

Section 366(c)(1)(A) provides that, "For purposes of this subsection, the term 'assurance of payment' means—(i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee." *See* 11 U.S.C. § 366(c)(1)(A). As Section 366(c) specifies the *form* of assurance that will be deemed adequate, the *amount* of assurance to be provided is thus squarely within the court's discretion. *Cf.* 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification **of the amount of an assurance of payment** under paragraph (2)." (Emphasis added)). "In determining if a debtor has provided adequate assurance of payment to a utility, the Court is 'afforded significant discretion' and must look at the facts of the case." *In re Astle*, 338 B.R. 855, 861 (Bankr. D. Idaho 2006) (citing *Virg. Elec. & Power Co. v. Caldor, Inc. (In re Caldor, Inc.-N.Y.)*, 117 F.3d 646, 650 (2d Cir. 1997)).[6] Such discretion, though, is not limitless. Section 366(c)(3)(B) provides, "In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider—(i) the absence of security before the date of the filing of the petition; (ii) the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or (iii) the availability of an administrative expense priority." 11 U.S.C. §§ 366(c)(3)(B)(i)-(iii). However, "[i]n deciding what constitutes 'adequate assurance' in a given case, a bankruptcy court must 'focus upon the need of the utility for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Virg. Elec.*, 117 F.3d at 650 (citation omitted) (emphasis in original). *See also In re Haven Eldercare, LLC*, 2008 WL 139543, *2 (Bankr. D. Conn. 2008) (the Court modified the amount of adequate assurance where certain utilities had not reached agreement with the debtors by the hearing).

---

[6] As noted in *In re Astle*, 338 B.R. at 861 n.15, "*Caldor* validates an administrative expense priority as sufficient assurance of payment in a chapter 11 case. However, the exclusion found in § 366(c)(1)(B) and the instruction contained in § 366(c)(3)(B)(iii) effectively overrule that aspect of *Caldor* in chapter 11 cases."

Courts construing Section 366(b) have long recognized that adequate assurance does not constitute an absolute guaranty of the debtor's ability to pay. "Adequate assurance of payment is not, however, absolute assurance. The key to achieving the balance required by § 366 is not to confuse adequate assurance with adequate protection, . . ." *In re Steinebach*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004). Further, "a Bankruptcy Court is not required to give a [Utility Provider] the equivalent of a guarantee of payment, but must only determine that the utility is not subject to any unreasonable risk of non-payment for post-petition services." *Steinebach*, 303 B.R. at 641 (quoting *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (S.D.N.Y. 2002)). "Section 366(b) requires the Bankruptcy Court to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require an 'absolute guaranty of payment.'" *In re Caldor, Inc.-N.Y.*, 199 B.R. 1, 3 (S.D.N.Y. 1996), *aff'd*, 117 F.3d 646 (2d Cir. 1997) (citation omitted).

It is also well established that Section 366(b) permits a Court to find that no adequate assurance payment at all is necessary to provide a utility with adequate assurance of payment. *See Virg. Elec.*, 117 F.3d at 650 ("Even assuming that 'other security' should be interpreted narrowly, we agree with the appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), **includes the power to require no 'deposit or other security'** where none is necessary to provide a utility supplier with 'adequate assurance of payment.'" (citation omitted) (emphasis added)). Accordingly, the relief requested through this Motion is not only well within the Court's discretion to grant but is well within the bounds of Section 366.

Debtors intend to pay all valid post-petition obligations for utility services provided by the Utility Providers in a timely manner. Moreover, the aggregate amount of Debtors' utility obligations is not overwhelming, and, Debtors were generally current with the Utility Providers as of the Petition Date. *See* Omnibus Decl. ¶ 80. In addition, Debtors have a powerful incentive to stay current on utility obligations because of their reliance on utility services for business operations. *See* Omnibus Decl. ¶ 81. These factors, which the Court may (and should) consider when determining the amount and adequacy of adequate assurance payments, justify a finding that

no additional adequate assurance payments are required for any of the Utility Providers in the Chapter 11 Cases. In light of the foregoing, Debtors respectfully submit that this evidence, combined with Debtors' demonstrated ability to make post-Petition Date payments if permitted to access their Deposit Accounts and Post-Petition Revenues, are more than sufficient to provide adequate assurance to Utility Providers of future payment, and, therefore, the relief requested in the Motion is warranted.

Moreover, if a Utility Provider disagrees with Debtors' analysis, the Procedures will enable the parties to negotiate and, if necessary, seek Court intervention without jeopardizing Debtors' continuing operations. If a Utility Provider fails to timely file a Request in accordance with the Procedures, however, such Utility Provider shall be deemed to consent to the Procedures and shall be bound by the Order. Such relief would be consistent with that granted by other bankruptcy courts. *See, e.g.*, *In re Syroco, Inc.*, 2007 WL 2404295, *2 (Bankr. D.P.R. Aug. 22, 2007) (a utility provider's lack of response, objection, or counter-demand after receiving notice of hearing on utilities motion, notice of the interim order, and notice of the final hearing constitutes tacit acceptance of the proposed adequate assurance of payment set forth in the motion).

The proposed Procedures are necessary for Debtors to carry out their reorganization efforts in the Chapter 11 Cases. If the Procedures are not approved, Debtors could be forced to simultaneously address several requests by multiple Utility Providers in a less-than-organized manner during the critical first weeks of their Chapter 11 reorganization. Moreover, Debtors could be blindsided by a Utility Provider unilaterally deciding that it is not adequately protected and discontinuing service or making an exorbitant demand for payment to continue service. Discontinuation of utility service could essentially shut down Debtors, or at a minimum would seriously impede Debtors' operations, and such significant disruptions in operations could put Debtors' reorganization efforts in jeopardy. *See* Omnibus Decl. ¶ 82.

Under the circumstances of these Chapter 11 Cases, Debtors believe that the evidence of their substantial ability to meet post-petition utility obligations constitutes adequate assurance of payment under Section 366(c).

## VI.
## RELIEF NECESSARY TO AVOID IRREPARABLE HARM

Bankruptcy Rule 6003 provides in pertinent part:

> (a) <u>In General</u>. Unless relief is needed to avoid immediate and irreparable harm, the court must not, within 21 days after the petition is filed, grant an application or motion to:
>     (1) employ a professional person under Rule 2014;
>     (2) use, sell, or lease property of the estate, including a motion to pay all or a part of a claim that arose before the petition was filed;
>     (3) incur any other obligation regarding the property of the estate; or
>     (4) assume or assign an executory contract or unexpired lease under § 365.
> (b) <u>Exception</u>. This rule does not apply to a motion under Rule 4001.

As set forth in this Motion, if the relief requested herein is not immediately granted, Debtors could experience immediate and irreparable harm. Absent the relief requested herein being granted, Debtors could be forced to simultaneously address several requests by multiple Utility Providers in a less-than-organized manner during the critical first weeks of their Chapter 11 reorganization. Moreover, Debtors could be blindsided by a Utility Provider unilaterally deciding that it is not adequately protected and discontinuing service or making an exorbitant demand for payment to continue service Thus, the relief requested herein is necessary to avoid immediate and irreparable harm, and the Court should find that the relief requested herein is needed to avoid immediate and irreparable harm, and, therefore, the Motion should be granted. Doing so will ensure Debtors' highest and best chances of successfully reorganizing and maximizing value for creditors.[7]

## VII.
## REQUEST FOR WAIVER OF BANKRUPTCY RULE 6004(h) STAY

Bankruptcy Rule 6004(h) provides, "Unless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after

---

[7] To the extent any of the relief requested herein is not granted effective as of the Petition Date, in the alternative and an abundance of caution, Debtors request the Court set a final hearing on this Motion on the earliest available Court date that is more than 21 days after the Petition Date. *See generally* Bankruptcy Rule 6003.

the order is entered." FED. R. BANKR. P. 6004(h). In view of the risk to Debtors' operations in the event utilities services are interrupted, disrupted, or terminated, imposition of a fourteen-day stay on any order granting this Motion is impractical and undermines the nature of the relief requested herein, which relief is necessary to Debtors' reorganization efforts. *See* Omnibus Decl. ¶ 181. Accordingly, Debtors requests this Court waive application of the stay under Bankruptcy Rule 6004(h) and provide in any order granting this Motion that such order shall be effective immediately.

## VIII.
## NOTICE

Debtors shall serve notice of this Motion on, among others, the following: (i) the Office of the United States Trustee for Region 17; (ii) the holders of the twenty (20) largest unsecured claims against each of the Debtors; (iii) any other committee that is appointed pursuant to Section 1102 of the Bankruptcy Code; (iv) the Utility Providers; and (v) other interested parties as listed on the service list, including any entity which, prior to the filing of this Motion, files and serves on Debtors through Debtors' general bankruptcy counsel a request for special notice.

Given the emergency nature of the relief requested herein, and the potential disruption to Debtors' business that will ensue if such relief is not granted, Debtors submit that no further notice need be given prior to granting the relief requested herein.

## IX.
## RESERVATION OF RIGHTS

Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against either of the Debtors, a waiver of Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Section 365. Debtors expressly reserve rights to contest any invoice of a Utility Provider under applicable non-bankruptcy law. Likewise, if this Court grants the relief requested herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim nor as a waiver of Debtors' rights to dispute such claim subsequently, all of which rights and remedies are expressly reserved herein.

# X.
# CONCLUSION

Debtors respectfully request interim and final orders, substantially in the forms attached hereto as **Exhibits 1 and 2**, respectively, pursuant to Sections 366, 1107, 1108, and 105 and Bankruptcy Rules 6003 and 6004:

a. Determining that the Utility Providers have been provided with adequate assurance of payment within the meaning of Section 366;

b. Approving in full the Procedures herein, through which Utility Providers may request additional or different adequate assurance;

c. Prohibiting the Utility Providers from altering, refusing, or discontinuing services on account of prepetition amounts outstanding and/or on account of any perceived inadequacy of adequate assurance of future payment;

d. Determining that, as to all Utility Providers, Debtors are not required to provide any additional adequate assurance beyond what is proposed by this Motion;

e. Waiving the fourteen-day stay imposed by Bankruptcy Rule 6004(h) that may otherwise be applicable to any order granting this Motion;

f. Finding that the relief requested in this Motion is necessary to avoid immediate and irreparable harm such that the exception set forth in Bankruptcy Rule 6003 applies, and therefore the 21-day time period otherwise imposed be waived; and

g. Granting such other and further relief as is just and proper.

DATED this 7th day of November, 2025.

> GARMAN TURNER GORDON LLP
>
> By: /s/ *Teresa Pilatowicz*
>     GREGORY E. GARMAN, ESQ.
>     TERESA M. PILATOWICZ, ESQ.
>     MARY LANGSNER, PH.D.
>     7251 Amigo Street, Suite 210
>     Las Vegas, Nevada 89119
>     [Proposed] *Counsel to the Debtors*