GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
E-mail: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000
[Proposed] *Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>COLORART, LLC,<br><br>Debtor. | Case No.:25-16701-nmc<br><br>Chapter 11<br><br>Date:   *OST Requested*<br>Time:   *OST Requested* |

**EMERGENCY MOTION FOR ENTRY OF AN ORDER: (I) AUTHORIZING PAYMENT OF EMPLOYEE COMPENSATION; AND (II) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS**

Las Vegas Color Graphics, Inc. ("LVCG") and ColorArt, LLC ("ColorArt"; together with LVCG, the "Debtors"), as debtors and debtors-in-possession in the above-captioned Chapter 11 Cases, by and through proposed general bankruptcy counsel, the law firm Garman Turner Gordon LLP, hereby submit the *Emergency Motion for Entry of an Order: (I) Authorizing Payment of Employee Compensation; and (II) Authorizing and Directing Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations* (the "Motion").[1]  The Motion respectfully requests this Court, pursuant to Sections 363, 507(a)(4), 507(a)(5), and 105 of the

---

[1] All references to "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to "Rule" or "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Nevada.

Bankruptcy Code and Bankruptcy Rules 6003 and 6004, enter an order substantially in the form attached hereto as **Exhibit 1**, authorizing and empowering the Debtors to pay Employee compensation, including deducting, remitting, and/or forwarding, as applicable, Deductions, Payroll Taxes, Garnishments, and Employee Benefit Contributions and authorizing and directing all applicable banks and other financial institutions to receive, process, honor, and pay any and all checks or other forms of payment related to Employee compensation set forth in this Motion as approved by the Order, whether presented prior to or after the Petition Date. A list of Employees and their related obligations subject of this Motion is attached hereto as **Exhibit "2"**. As joint administration of the Debtors' Chapter 11 Cases is pending, a substantially similar Motion has been filed in each of the Chapter 11 Cases.

This Motion is made and based upon the Memorandum of Points and Authorities herein; the *Omnibus Declaration of Eran Salu in Support of Chapter 11 Petitions and First Day Motions* (the "Omnibus Decl.") filed concurrently herewith; the papers and pleadings on file in the Chapter 11 Cases, judicial notice of which is hereby respectfully requested pursuant to FED. R. EVID. 201(b) and (c) and 1101(a) and (b); and the argument of counsel at hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.
INTRODUCTION**

Pre-petition wage claims may be paid outside of a plan of reorganization by virtue of their necessity as well as their priority. Sections 507(a)(4) and (a)(5) of the Bankruptcy Code provide that certain employee wage and benefits claims are priority claims. Payment of Employee compensation is essential to maintaining Employee morale, necessary to retain Debtors' Employees, and critical to the survival of Debtors' business and reorganization efforts. The amounts requested to be paid through this Motion are necessary for each of the Debtors to maintain operations and do not exceed the statutory cap set forth in Sections 507(a)(4) and (a)(5). If the relief requested herein is not granted, the success of Debtors' reorganization will be in jeopardy, and, as such, the relief requested is in the best interests of the Debtors, their estates, and creditors.

/ / /

## II.
## BACKGROUND

1. On November 5, 2025, each of the Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code, thereby commencing the Chapter 11 Cases. *See, e.g.*, ECF No. 1.

2. A detailed description surrounding the facts and circumstances of these Chapter 11 Cases is set forth in the Omnibus Decl., filed contemporaneously herewith and incorporated by herein by this reference.

## III.
## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 1001(b)(1). This Motion is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (M), and (O). Venue of Debtors' Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a "core proceeding" over which the Court has jurisdiction to render a decision.

4. Debtors continue to operate their business and manage their property as Debtors and debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5. The statutory bases for the relief requested herein are Sections 363, 507(a)(4), 507(a)(5), and 105 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

6. Pursuant to Local Rule 9014.2, Debtors consent to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

## IV.
## LEGAL ARGUMENT

**A.    Authorization of Payment of Employee Compensation.**

Pursuant to a *Shared Services Agreement* that the Debtors (and others) entered into with JAL Equity Corp. (the "Provider"), a copy of which is attached as **Exhibit "E"** to the Omnibus Decl. (the "SSA"), the Provider employs individuals identified on its books and records and assigns these individuals to provide Services (as that term is defined in the SSA), to each of the Debtors. In

connection with the Credit Agreement, the Provider executed that certain *Validity and Support Agreement,* dated as of June 6, 2024 (as may be amended, restated, supplemented or otherwise modified from time to time, the "Support Agreement") pursuant to which Lender required JAL to provide those certain support services traditionally handled by JAL pursuant to an existing SSA including paying payroll through JAL from funds provided by Debtors in exchange for JAL providing employees to Debtors. *See* Omnibus Decl. ¶ 13.

As of the Petition Date, Debtors together have approximately 220 people working for them on a consolidated basis (herein collectively, the "Employees")[2] in the ordinary course of business. Pursuant to § 2.2(a)(ii) of the SSA, "To the maximum extent permitted by law … all Employees may be deemed to be independent contractors of the Recipients and not employees of any Recipient for any purpose." Of the Employees, approximately 54 are paid on salary and 166 are paid hourly. Continued service by the Employees is vital to Debtors' ongoing operations: their skills, knowledge, and understanding of Debtors' operations, customer relations, and infrastructure are essential to the effective reorganization of Debtors. *See* Omnibus Decl. ¶ 56.

Pursuant to the SSA, each of the Debtors reimburses Provider for Direct Employment Costs, which are, collectively, the "Wages, Employment Benefits, Insurance, Termination Benefits and Employee Expenses incurred by Provider pursuant to Section 1.7" *See* SSA § 2.1(a). *See* Omnibus Decl. ¶ 57.

Pursuant to the SSA, each of the Debtors also reimburses Provider for Indirect Employment Costs, "which shall mean the Hiring Costs and all other costs incurred by Provider in employing the Employees apart from the Direct Employment Costs, of the types and in the amounts agreed by the Parties. Indirect Employment Costs shall include but need not be limited to premiums for employment practices liability insurance, general liability insurance, automobile insurance, personnel or administrative costs, and other costs incurred by Provider in employing the

---

[2] Approximately 136 are ColorArt LLC ("ColorArt"); approximately 84 are Las Vegas Color Graphics, Inc. Pursuant to § 2.2(a) of the SSA, "To the maximum extent permitted by law, (i) Provider may be deemed to be the sole employer of the Employees for all purposes, and (ii) all Employees may be deemed to be independent contractors of the Recipients and not employees of any Recipient for any purpose."

Employees." *See* SSA § 2.1(b).  *See* Omnibus Decl. ¶ 58.

The Direct Employment Costs and the Indirect Employment Costs (collectively, the "Employment Costs") are apportioned between the Debtors pursuant to § 2.1(c) of the SSA. Additionally, the SSA requires each of the Debtors to pay its own apportioned share of the Employment Costs to the Provider. *See* SSA § 2.1(d).  *See* Omnibus Decl. ¶ 59.

The Employees who perform Services for the Debtors are paid either on salary or an hourly basis and are paid bimonthly, typically on the tenth (10th) and twenty-sixth (26th) of each month, with payroll paid in arrears (the "Wages").  The average gross per period is approximately $600,000 (collectively, the "Wage Obligations").  As of the Petition Date, Debtors believe they have unpaid Wage Obligations that have accrued and remain unpaid, in the amounts of $176,048 for LVCG and $330,939 for ColorArt.  *See* Omnibus Decl. ¶ 61.

Withholding from Wages the amounts related to federal and state income taxes, as well as Social Security and Medicare taxes, and the remitting of the same to the appropriate taxing authorities, is required by law.  To the extent funds were deducted from Employees' Wages sufficient to pay prepetition taxes, withholding taxes, and FICA contributions attributed to Wage Obligations which are due but have not yet been paid to any governmental entity (the "Deductions"), Debtors seek authorization to continue to ensure such funds are appropriately deducted and paid to such governmental entities in the ordinary course of business.  *See* Omnibus Decl. ¶ 62.

The Provider is also required to make matching payments from its own funds on account of Social Security and Medicare taxes, and to pay, based on a percentage of gross payroll (and subject to state-imposed limits), additional amounts to the taxing authorities for, among other things, state and federal unemployment insurance (collectively, the "Payroll Taxes"); such amounts are ultimately borne by the Debtors pursuant to the SSA.  Debtors therefore seek authorization to continue to cover and remit to the provider all Employment Costs related to Payroll Taxes in the ordinary course of business.  *See* Omnibus Decl. ¶ 63.

In the ordinary course of processing payroll checks for the Employees, the Provider may, from time to time, be required to withhold certain amounts for various garnishments (such as tax levies, child support, and student loans) (collectively, along with any renewals or extensions thereof,

the "Garnishments").  As of the Petition Date, Debtors estimates that less than $10,000 in Garnishments have been withheld.  Debtors seek a comfort order that any amounts paid to the provider to cover Employment Costs for its Employees that may also be subject to any Garnishments, shall commensurately be authorized to pay over any such Garnishments in the ordinary course of business. *See* Omnibus Decl. ¶ 64.

As set forth in § 1.7 of the SSA, the provider, in the ordinary course of business, accrues amounts for contributions (the "Employee Benefit Contributions") to 401(k) retirement plans, health and benefit programs, and voluntary insurance plans (collectively, the "Employee Benefit Plans"), pertaining to services rendered by the Employees prior to the Petition Date.  Specifically, the Employee Benefit Plans include, but are not limited to, 401(k) contributions, medical and dental and/or vision benefits, long-term and/or short-term disability insurance, paid vacation, paid sick leave, and other forms of paid time off.  All costs associated with the Employee Benefit Contributions are ultimately borne by the respective Debtor for whom an Employee works.  The Employee Benefit Contributions are an integral part of the compensation to which the Employees are entitled. The amount of Employee Benefit Contributions which will have accrued, but will remain unpaid, prior to the Petition Date are estimated to be no more than $173,201.00. *See* Omnibus Decl. ¶ 65.

If Debtors are unable to take the necessary steps to ensure that Wage Obligations and Employee Benefit Contributions are paid for the pay period commencing immediately prior to the Petition Date and concluding post-petition, there is a significant risk that a large number of essential Employees will resign and remaining Employees will be discontented and demoralized, thus negatively affecting a successful reorganization.  *See* Omnibus Decl. ¶ 66.

The Provider also provides workers' compensation benefits to its Employees at the statutorily-required levels (the "Workers' Compensation System"), for which any cost is borne by the Debtor for whom the Employee performs Services.  *See* Omnibus Decl. ¶ 67.

If permitted to utilize the cash in their Deposit Accounts and from their Post-Petition Revenues (as defined in the Omnibus Decl.),  Debtors will have sufficient liquidity to pay the Employment Costs, which include the costs associated with Wage Obligations, Wages and

Deductions, Payroll Taxes, Employee Benefit Contributions, Garnishments, and the Workers' Compensation System. *See* Omnibus Decl. ¶ 67.

By this Motion, Debtors seek authority to pay and/or honor the Employee-related obligations set forth herein in an effort to (i) maximize the value of the estate by maintaining workplace morale and an essential employment base during this critical time, and (ii) minimize the personal hardship that the Employees will suffer if Debtors cannot honor prepetition employee benefit and other wage-related obligations. The aggregate of Wage Obligations, and Employee Benefit Contributions to be paid to or for the benefit of each of the Employees pursuant to this Motion will not exceed $17,150.00 per Employee, per the cap in Sections 507(a)(4) and (a)(5) of the Bankruptcy Code. *See* Omnibus Decl. ¶ 69.

## V.
## LEGAL AUTHORITY

**A.     Payment of Employee Compensation Is Appropriate and Warranted.**

Continued payment of Wage Obligations, Employee Benefit Contributions, as well as maintaining Employee Benefit Plans and Workers' Compensation System, are essential to preserve the morale and to maintain positive relations between Debtors and Employees. If the relief requested herein is not granted, the success of Debtors' reorganization will be placed in substantial jeopardy. Thus, the relief requested in this Motion is in the best interests of Debtors' estate, creditors, and parties-in-interest. *See* Omnibus Decl. ¶ 70.

Section 363(b)(1) of the Bankruptcy Code provides in pertinent part, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, . . ." 11 U.S.C. § 363(b)(1). "This plain text is generalized and sweeping; so long as the bankruptcy court approves a proposed transaction under defined standards discussed below, nearly any 'use,' 'sale,' or 'lease' of property is permitted." *In re Claar Cellars LLC*, 2020 WL 1238924, *3 (Bankr. E.D. Wash. 2020). Courts have approved payment of prepetition wages as "intended to retain the employee cadre, because payment of those sums would be of a priority nature in any event." *In re Berry Good, LLC*, 400 B.R. 741, 744-45 (Bankr. D. Ariz. 2008) (citing 11 U.S.C. § 507(a)(4)).

Additionally, courts may rely on Section 105(a) to approve immediate payment of prepetition obligations when essential to the continued operation of debtor's business. *See, e.g.*, *In re CEI Roofing, Inc.*, 315 B.R. 50, 59-60 (Bankr. N.D. Tex. 2004)[3]; *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("upon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee."). Section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. *See* 11 U.S.C. § 105(a). Wage claimants are among the "rare and exceptional circumstances," in which the "clean line" between pre- and post-petition debt is "blur[red]." *In re Berry Good, LLC*, 400 B.R. at 747.

Sections 507(a)(4) and (a)(5) provide that certain employee wage and benefits claims are priority claims. Section 507(a)(4) provides in pertinent part that "allowed unsecured claims, but only to the extent of $17,150.00[4] for each individual . . . earned within 180 days before the date of filing of the petition . . ., for—(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual[]" are fourth priority claims. *See* 11 U.S.C. § 507(a)(4). And Section 507(a)(5) provides in pertinent part that "allowed unsecured claims for contributions to an employee benefit plan—(A) arising from services rendered within 180 days before the date of the filing of the petition . . ." are fifth priority claims, but only to the extent the aggregate amount of such claims do not exceed the cap set forth in Section 507(a)(5)(B) (which is currently $17,150.00). *See* 11 U.S.C. § 507(a)(5).

The amounts requested to be paid through this Motion are necessary for Debtors to maintain operations and do not exceed the statutory cap set forth in Sections 507(a)(4) and (a)(5). Payment of Wage Obligations and Employee Benefit Contributions, as well as maintaining Employee Benefit Plans and Workers' Compensation System, are essential to preserve the morale and to

---

[3] Later, the unreported *In re Scotia Dev., LLC*, 2007 WL 2788840 (Bankr. S.D. Tex. 2007), noted a limitation to *CEI Roofing* "[t]o the extent that the existing holders of claims of higher priority than the wage claims consent or do not timely object. . . ." *Scotia Dev.*, 2007 WL 2788840 at *2. As of this filing, *Scotia Dev.* does not appear to have been cited approvingly by any other court.

[4] As adjusted on April 1, 2025, by the Judicial Conference of the United States.

maintain positive relations between Debtors and its Employees. *See* Omnibus Decl. ¶ 70. As such, the relief requested in this Motion is critical to the survival of Debtors' business and to maintaining Debtors' ongoing business and well as the reorganization effort. If the relief requested herein is not granted, the success of Debtors' reorganization will be in jeopardy, and, as such, the relief requested is in the best interests of the Debtors, their estates, and creditors.

Pre-petition wage claims may be paid outside of a plan of reorganization by virtue of their necessity as well as their priority. *See In re CEI Roofing, Inc.*, 315 B.R. 50, 61 (Bankr. N.D. Tex. 2004) ("The treatment and payment of [prepetition wages and benefits] claims before confirmation does no violence to the Code . . ."); *In re The Colad Group, Inc.*, 324 B.R. 208, 214 (Bankr. W.D.N.Y. 2005) (recognizing the approval payment of pre-petition wages and benefits subject to certain limitations, as "the debtor represented that nearly all of these wages, benefits and taxes would constitute priority claims; that the debtor had incurred these obligations in its ordinary course of operations; that the outstanding wages and benefits were pre-petition obligations that were not yet payable; [and] that a disruption of wage and benefit payments could affect its ability to maintain its work force. . ."); *In re Equalnet Comm. Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) (recognizing that payment of employee wage claims "in an ordinary course of business time frame is simple common sense. Employees are more likely to stay in place and to refrain from actions which could be detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted[]"); *see also In re News Pub. Co.*, 488 B.R. 241, 245 (Bankr. N.D. Ga. 2013) ("courts often authorize payment of pre-petition wages prior to plan confirmation as a business necessity[]" (citations omitted)); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (recognizing "sound business reasons" had been articulated, as "it was critical for [debtor] to pay [pre-petition wages] claims in order to preserve and protect [the debtor's] business and ultimately reorganize, retain its currently working employees and maintain positive employee morale."); *see also In re MacMillan*, 652 B.R. 812, 816 (Bankr. D. Or. 2023) (recognizing "good reasons under the Bankruptcy Code to treat the payment of prepetition priority employee obligations differently than allegedly critical general unsecured claims."); *see also In re Tusa-Expo Holdings, Inc.*, 2008 WL 4857954, *2 (Bankr. N.D. Tex. 2008) ("payment of priority wage (and benefit) claims does not

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

diminish a debtor's estate to the detriment of holders of general unsecured claims."). Additionally, the Ninth Circuit has recognized that "[c]ases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key employees; . . ." *See Burchinal v. Centr. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (citations omitted), *disagreed with on other grounds by Matter of Saybrook Mfg. Co., Inc.*, 963 F.2d 1490 (11th Cir. 1992).

Last, with respect to payroll taxes in particular, the payment of such taxes will not prejudice other creditors of the Debtors' estate because the relevant taxing authorities generally would hold priority claims under Section 507(a)(8)[5] with respect to such obligations in any event. Moreover, the Payroll Taxes withheld from Wages on behalf of the applicable taxing authority is held in trust and as such are not property of the estate pursuant to Section 541 of the Bankruptcy Code. *Cf. Beiger v. IRS*, 496 U.S. 53 (1990) (property which the debtor holds in trust for the government is not property of the estate).

## VI.
## RELIEF NECESSARY TO AVOID IRREPARABLE HARM

Bankruptcy Rule 6003 provides in pertinent part:

> (a) <u>In General</u>. Unless relief is needed to avoid immediate and irreparable harm, the court must not, within 21 days after the petition is filed, grant an application or motion to:
> (1) employ a professional person under Rule 2014;
> (2) use, sell, or lease property of the estate, including a motion to pay all or a part of a claim that arose before the petition was filed;
> (3) incur any other obligation regarding the property of the estate; or
> (4) assume or assign an executory contract or unexpired lease under § 365.

---

[5] In relevant part, Sections 507(a)(8)(C) and (D) provide a priority claim for taxes to the extent such claims are for—
(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity; [or]
(D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (4) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition[.]

*See* 11 U.S.C. §§ 507(a)(8)(C)-(D).

(b) <u>Exception</u>.  This rule does not apply to a motion under Rule 4001.

As set forth in this Motion, if the relief requested herein is not immediately granted, Debtors could experience immediate and irreparable harm.  Absent the relief requested herein being granted, Debtors could be forced to not operate since Employees will not be paid.  Failure to grant the relief requested herein could essentially shut down Debtors, or at a minimum would seriously impede Debtors' operations.  Any such significant disruption in operations could put Debtors' reorganization efforts in jeopardy.  *See* Omnibus Decl. ¶ 72.  Thus, the relief requested herein is necessary to avoid immediate and irreparable harm, and the Court should find that the exception set forth in Bankruptcy Rule 6003 applies here.  Doing so will ensure Debtors' highest and best chances of successfully reorganizing and maximizing value for creditors.[6]

## VII.
## REQUEST FOR WAIVER OF BANKRUPTCY RULE 6004(h) STAY

Bankruptcy Rule 6004(h) provides, "Unless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." FED. R. BANKR. P. 6004(h).  In view of the risk to Debtors' operations in the event Employees are not paid, imposition of a fourteen-day stay on any order granting this Motion is impractical and undermines the nature of the relief requested herein, which relief is necessary to Debtors' reorganization efforts.  *See* Omnibus Decl. ¶ 73.  Accordingly, Debtors requests this Court waive application of the stay under Bankruptcy Rule 6004(h) and provide in any order granting this Motion that such order shall be effective immediately.

## VIII.
## NOTICE

Debtors shall serve notice of this Motion on, among others, the following: (i) the Office of the United States Trustee for Region 17; (ii) the holders of the twenty (20) largest unsecured claims against each of the Debtors; (iii) any committee that is appointed pursuant to Section 1102 of the

---

[6] To the extent any of the relief requested herein is not granted effective as of the Petition Date, in the alternative and an abundance of caution, Debtors request the Court set a final hearing on this Motion on the earliest available Court date that is more than 21 days after the Petition Date.  *See generally* Bankruptcy Rule 6003.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

11

Bankruptcy Code; and (iv) other interested parties as listed on the service list, including any entity which, prior to the filing of this Motion, files and serves on Debtors through Debtors' general bankruptcy counsel Garman Turner Gordon LLP a request for special notice.

Given the emergency nature of the relief requested herein, and the potential disruption to Debtors' business that will ensue if such relief is not granted, Debtors submit that no further notice need be given prior to granting the relief requested herein.

## IX.
## RESERVATION OF RIGHTS

Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against either of the Debtors, a waiver of Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Section 365. Debtors expressly reserve rights to contest under applicable non-bankruptcy law. Likewise, if this Court grants the relief requested herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim nor as a waiver of Debtors' rights to dispute such claim subsequently, all of which rights and remedies are expressly reserved herein.

## X.
## CONCLUSION

Based on the foregoing, Debtors respectfully requests that the Court enter the order attached hereto as **Exhibit 1**:

(A) Authorizing and empowering the Debtors to: (1) pay the Wage Obligations and costs incident thereto and (2) remit Deductions, Garnishments, Payroll Taxes, and Employee Benefit Contributions to the applicable state or federal taxing authorities, law firms, governmental agencies, or plan sponsor tasked with collecting such funds, all in conformity with the SSA;

(B) Authorizing and directing all applicable banks and other financial institutions to receive, process, honor, and pay any and all checks or other forms of payment related to the Employee compensation authorized herein, whether presented prior to or after the Petition Date in

accordance with the stated policies with regard thereto, provided sufficient funds exist in the respective account(s) to cover such payments;

      (C)    Waiving the fourteen-day stay applicable to any order approving the use of estate property imposed by Bankruptcy Rule 6004(h);

      (D)    Waiving the 21-day time period imposed by Bankruptcy Rule 6003 to avoid immediate and irreparable harm; and

      (E)    Granting such other and further relief as is just and proper.

Dated this 7th day of November 2025.

                                        GARMAN TURNER GORDON LLP

By: /s/ Teresa Pilatowicz
GREGORY E. GARMAN, ESQ.
TERESA M. PILATOWICZ, ESQ.
MARY LANGSNER, PH.D.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*[Proposed] Attorneys for Debtors*