# EXHIBIT C

# EXHIBIT C

# SUPPORT AGREEMENT

Dated as of June 6, 2024

TO:     AEQUUM CAPITAL FINANCIAL II LLC, a Delaware limited liability company

RE:     COLORART

 LLC, a North Carolina limited liability company ("**ColorArt**"), and LAS VEGAS COLOR GRAPHICS, INC., a Nevada corporation ("**Las Vegas**"; together with ColorArt and each other Person that joins the Agreement (as defined below) as a Borrower, individually and collectively, as the context may require, "**Borrower**")

Ladies and Gentlemen:

JAL Equity Corp., a Nevada corporation ("**JAL**") provides certain general management services, business advisory services, back office support and corporate services, information technology and telecommunications services, accounting, human resources, treasury and tax services (including payroll), legal services, and marketing services to Borrower (collectively, the "**Services**").  In JAL's capacity as a provider of the Services to Borrower, in order to induce you, AEQUUM CAPITAL FINANCIAL II LLC, a Delaware limited liability company ("**you**" or "**Lender**") to make advances to Borrower pursuant to that certain Credit and Security Agreement dated of even date herewith between you and Borrower (the "**Agreement**"; capitalized terms used herein and not otherwise defined shall have the meanings assigned to such terms in the Agreement), JAL hereby represents and covenants to Lender, that:

1.      Until such time as the "**Obligations**" (as defined in the Agreement) are indefeasibly paid in full in cash and the Agreement is terminated, JAL, or its successors and assigns pursuant to Section 11 of this Agreement, shall, in its capacity as a provider of the Services to Borrower:

(a)     Continue providing the Services to Borrower consistent with the manner that such Services are provided to Borrower as of the date hereof in all material respects;

(b)     Not terminate any Services to Borrower that are necessary to the normal operation of Borrower's business without the prior written consent of Lender; and

(c)     Not do anything to impede or interfere with the normal operation of Borrower's business; and

(d)     All Services provided by JAL to Borrower or any other Loan Party shall be pursuant to terms that are no less favorable to Borrower or such other Loan Party than the terms upon which such transactions would have been made had they been made to or with a Person that is not an Affiliate, including, without limitation, the fees charged by JAL for any such Services.

2.      Until such time as the Obligations are indefeasibly paid in full in cash and the Agreement is terminated, during a Default Period, including as a result of an Event of Default under Section 13.01(g) or (h) of the Agreement, JAL (and all officers, employees or agents of JAL used in the provision of the Services) will continue providing the Services to Borrower during such Default Period. JAL shall not have any authority to bind Lender, except such specific authority as Lender may grant in writing. Without limitation of the foregoing, if and to the extent the Agreement permits Lender to require any of the following actions during a Default Period, then during any Default Period:

(a)      JAL (and all officers, employees or agents of JAL used in the provision of the Services) will not object to, delay, impede, or take any other action to interfere with the exercise of Lender's rights or remedies granted under the Agreement and the other Loan Documents;

(b)      JAL (and all officers, employees or agents of JAL used in the provision of the Services) will not object to, delay, impede, or take any other action to interfere with the acceptance, implementation, or consummation of any plan of orderly liquidation or sale of Borrower, in order to repay the Obligations and the other liabilities of the Borrower and will cause Borrower to execute against that plan, modifying and revising it with Lender's consent as any modification or revision appears to be desirable;

(c)      JAL (and all officers, employees or agents of JAL used in the provision of the Services) will assist Lender in effecting the sale or other disposition of the "**Collateral**" (as defined in the Agreement) upon such terms as the JAL believes to be best designed to maximize the proceeds obtainable from such sale or other disposition;

(d)      JAL (and all officers, employees or agents of JAL used in the provision of the Services) will assist Lender in effecting the sale or other disposition of all other property pledged to Lender or in which Lender is granted a security interest pursuant to any of the Loan Documents executed and delivered to Lender by Borrower or its Affiliates pursuant to or in connection with the Agreement;

(e)      JAL (and all officers, employees or agents of JAL used in the provision of the Services) will assist Lender in reconstructing records and/or assuring that Borrower maintains such records as Lender may request; and

(f)      JAL (and all officers, employees or agents of JAL used in the provision of the Services) will take such other actions as Lender may reasonably request to furnish support to Lender in the collection of the Obligations.

Notwithstanding anything to the contrary herein, this Section 2 does not: (i) limit or waive any claim or defense that Borrower may have under the Agreement, (ii) require JAL to agree that an Event of Default has occurred in the event Borrower disputes such finding, (iii) require JAL to take any action, other than continuing to provide Services, in the event Borrower disputes whether an Event of Default has occurred.

3.      Notwithstanding anything herein to the contrary, Lender shall not be (a) liable for any act or omission or misrepresentation, breach of warranty or other default or negligence of Borrower, any other Loan Party or any other Person; (b) subject to any offset, claim, credit, recoupment, counterclaim or setoff, estoppel or defense of any nature which JAL might be entitled to assert against Borrower, any other Loan Party or any other Person; (c) bound by any agreement entered into between JAL and Borrower or any other Loan Party with respect to all or any of the Services (a "**Services Agreement**") or in connection with any modification or amendment of any such Services Agreement made in violation of this this Support Agreement; (d) bound by any of Borrower's, any other Loan Party's or any other Person's  liabilities or obligations with respect to any Services or under or in connection with any Services Agreement (except for such payments expressly agreed to be made in Section 2); or (e) bound by any obligation to indemnify or reimburse JAL whether under any Services Agreement, by operation of law or otherwise.

4.      Any negligence, mistake, act or omission of any of Lender's officers, agents, accountants, attorneys or employees in the course of dealing with Borrower shall not relieve JAL of its Obligations hereunder, but neither shall it give rise to liability on the part of JAL for any action, or omission to act, taken in reasonable reliance upon any act of any such officer, agent, accountant, attorney or employee.

5.      The covenants and representations contained herein shall be continuing in nature until such time as the Obligations are indefeasibly paid in full in cash and the Agreement is terminated.  JAL hereby acknowledges that Lender have relied upon the covenants and representations contained herein, and if JAL fails to observe or perform any of such covenants, its actions in making such covenants or representations shall give rise to liability to Lender to the extent of any damages suffered by Lender as a direct result thereof.

6.      Notwithstanding and without limiting any other provision of this Support Agreement, the Agreement, any Loan Document or any Services Agreement, Borrower and JAL shall indemnify and hold harmless Lender and its Affiliates and its and their respective managers, members, officers, employees, Affiliates, agents, representatives, successors, assigns, accountants and attorneys and their respective Affiliates (collectively, the "**Indemnified Persons**") from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses and disbursements of any kind or nature whatsoever (including the disbursements and the reasonable fees of counsel for each Indemnified Party in connection with any investigative, administrative or judicial proceeding, whether or not the Indemnified Party shall be designated a party thereto) (collectively, the "**Indemnified Liabilities**") that may be imposed on, incurred by or asserted against Lender or any other Indemnified Party (whether direct, indirect or consequential and whether based on any federal, state or local laws or regulations, including securities laws and regulations, Environmental Laws and commercial laws and regulations, under common law or in equity, or based on contract or otherwise), directly, or indirectly, under or by reason of this Support Agreement and from any and all claims and demands whatsoever which may be asserted against the Indemnified Parties or any of them by reason of any alleged obligations or undertakings on their part with respect to this Support Agreement; provided, however, that JAL shall not have any obligation hereunder to any Indemnified Party with respect to matters caused by or resulting from the willful misconduct or gross negligence of such Indemnified Party.  Should any Indemnified Persons incur any such liability, the amount thereof, together with interest thereon at the rate of

3

interest applicable from time to time under the Loan Documents, shall be payable by JAL to Lender immediately upon demand.  The provisions of this <u>Section 6</u> shall survive the termination of this Support Agreement and the payment in full, or in part, of the Obligations.

7.      Lender shall not be required to prosecute collection, enforcement or any other remedies against Borrower or against any other person, or to enforce or resort to any security, liens, collateral or other rights or remedies appertaining thereto before making a claim against JAL arising out of a breach of this Support Agreement, nor shall JAL be released or affected by reason of any failure or delay on the part of Lender to do so.

8.      JAL WAIVES ITS RIGHT TO A TRIAL BY JURY IN THE EVENT OF ANY ACTION OR PROCEEDING BROUGHT BY LENDER ON ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS SUPPORT AGREEMENT.

9.      THIS SUPPORT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS (AS OPPOSED TO THE CONFLICTS OF LAW PROVISIONS) OF THE STATE OF ILLINOIS.

10.     This Support Agreement and any amendments, waivers, consents or supplements hereto may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all taken together shall constitute a single contract. This Support Agreement and the other Loan Documents to which JAL is a party constitute the entire contract among the parties with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto. Delivery of an executed counterpart of a signature page to this Support Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Support Agreement.

11.     If, in connection with a transfer of any Equity Interests to an Affiliate of JAL in accordance with the terms of the Agreement, the obligations to provide Services are assigned to such Affiliate, JAL may assign this Support Agreement to such Affiliate.

*[signature page to follow]*

Very truly yours,

JAL EQUITY CORP., a Nevada corporation

By:_____
Name: Eran Salu
Title: President, Treasurer and Secretary

Agreed to and Acknowledged by:

COLORART LLC,
a North Carolina limited liability company
By:_____
Name: Eran Salu
Title: President, Treasurer and Secretary

LAS VEGAS COLOR GRAPHICS, INC.,
a Nevada corporation
By:_____
Name: Eran Salu
Title: President, Treasurer and Secretary

[Signature Page to Support Agreement]

Accepted:

AEQUUM CAPITAL FINANCIAL II LLC, a Delaware limited liability company

By: _____

Name:

Title:

**Daniel McNally**

**Vice President**

[Signature Page to Support Agreement]