GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
E-mail: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000
[Proposed] *Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: 25-16701-nmc |
| COLORART, LLC, | Chapter 11 |
| Debtor. | Date: November 13, 2025<br>Time: 1:30 p.m. |

**RESPONSE IN OPPOSITION TO AEQUUM CAPITAL FINANCIAL II LLC'S MOTION TO PROHIBIT USE OF CASH COLLATERAL; REPLY TO OBJECTION TO MOTION TO USE CASH COLLATERAL**

Debtors Las Vegas Color Graphics, Inc. ("LVCG") and ColorArt, LLC ("ColorArt"; together with LVCG, the "Debtors") hereby respectfully submit this opposition ("Opposition") to *Aequum Capital Financial II LLC's Motion to Prohibit Use of Cash Collateral* ("Motion") filed by Aequum Capital Financial II LLC ("Aequum") and further submit their reply (the "Reply") to the objection (the "Objection") filed by Aequum to *Debtors' Emergency Motion Pursuant to 11 U.S.C. §§ 105, 361, 363, and 506, and FED. R. BANKR. PROC. 4001(b) for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Scheduling a Final Hearing* [LVCG ECF No. 10; ColorArt ECF No. 12] ( "Cash Collateral Motion").[1]

The Opposition and Reply are supported by the *Omnibus Declaration of Eran Salu*

---
[1] The Cash Collateral Motion, and all evidence and papers and pleadings submitted in connection therewith, are hereby incorporated by this reference as if fully set forth herein.

("Omnibus Decl.") on file in these Chapter 11 Cases; the *Supplemental Declaration of Eran Salu* ("Salu Decl."), filed contemporaneously herewith; the papers and pleadings on file in the Chapter 11 Cases, judicial notice of which is respectfully requested pursuant to FED. R. EVID. 201(b) and (c) and 1101(a) and (b); and the argument and evidence presented by counsel at the hearing on the Motion and the Cash Collateral Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Debtors' Chapter 11 Cases are about due process. Debtors filed these Chapter 11 Cases to effectuate a centralized reorganization amidst escalating aggressive litigation tactics by Aequum who, *based on alleged defaults that had long been cured*, starved the Debtors of cash needed for operating capital, locked the Debtors out of their Wells Fargo account, and ultimately sought the appointment of a receiver in Missouri on an expedited basis. Aequum, pre-petition and now post-petition, has prevented any payment to permit ongoing business to the harm of the entire creditor body in what can only be viewed as efforts solely to give an unfair advantage to Aequum.

Aequum's aggressive litigation tactics have continued in Debtors' Chapter 11 Cases. ***Withing the first three days of the Chapter 11 Cases***, Aequum sought immediate discovery before a motion was on file, filed an unnecessary motion to prohibit the use of cash collateral (the Debtors' cash collateral motion was already on file in one of the Chapter 11 Cases and about to be filed in the other); initiated motion practice to expedite discovery before First Day Motions were even scheduled and without holding a meet and confer; and demanded discovery responses and depositions on one business day's notice. Even more, in blatant violation of the provisions of the Bankruptcy Code, Aequum has failed to provide Debtors access to their pre-petition bank accounts and instructed the Receiver to not comply with Debtors' demand for turnover of its accounts.

Debtors are real, legitimate, established business generating millions of dollars in revenue a year. They are entitled to the breathing spell that is paramount in the Bankruptcy Code to stabilize and reorganize their businesses in a manner which best serves all creditors and parties-in-interest. This will take place through a centralized process before the Bankruptcy Court through debtors-

in-possession that will operate under the watchful eye of the Court, the US Trustee, and other parties in interest. Debtors have set forth their need for use of cash collateral, which is further established in the Salu Dec., and offered adequate protection for its use. Debtors are entitled to, and must be allowed to, access and use their cash within the requirements of Section 363 to continue operations to repay their creditors and reorganize their businesses.

## II.   BACKGROUND[2]

1. Debtors filed their petitions for relief under Chapter 11 of the Bankruptcy Code on November 5, 2025 (the "Petition Date").

2. The filings were ultimately necessitated by Aequum's inexplicable increasingly aggressive stance against Debtors beginning in early summer 2025, which are summarized in the Salu Decl., and the appointment of a Receiver. *See* Salu Decl. ¶¶ 4-39; **Exs. "1" – "8."**

3. Based on the aggressive stance taken by Aequum so quickly and so early in these Chapter 11 Cases, and preceding them, there can be no confidence that Aequum values the Debtors' business as a going concern and instead appears motivated to keep Debtors from continuing to operate, thereby harming all creditors in the Chapter 11 Cases. *See* Salu Decl. ¶ 40.

## III.   ANALYSIS

### A.   Aequum Has Failed to Meet Its Burden of the Extent of Its Cash Collateral

11 U.S.C. § 363(p) of the Bankruptcy Code requires that "In any hearing under this section—. . . (2) the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest."  Here, Aequum asserts it has an interest in the Debtors' cash collateral and that the Debtors' use of cash collateral should be outright denied.  As a predicate and threshold matter, the Bankruptcy Code requires parties such as Aequum to actually ***prove up*** the interest that they are asserting.  Here, Aequum has not done so.  While the record in these very young Chapter 11 Cases is already replete with competing discovery motions, competing cash collateral motions, first day motions, and Aequum's insistence on discovery—all

---

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Omnibus Declaration of Eran Salu* ("Omnibus Decl."), on file at ECF No. 16 in the Las Vegas Color Graphics, Inc. case [Case no. 25-16697], and ECF No. 15 in the ColorArt, LLC case [Case No. 25-16701].

filed within the first **three to five days** of these Chapter 11 Cases—totally missing *from the evidentiary record before this Court* is proof from Aequum as to the validity, the priority, and the extent of the interest(s) it asserts in Debtors' collateral including cash and cash collateral. Absent this, Aequum has failed to carry its burden to show the relief requested in its Motion can be granted.

Additionally, the information Aequum has put into evidence, namely a partial transcript of a prepetition hearing in another matter, and copies of Missouri State Court Case documents, do not carry Aequum's burden of proof under the Bankruptcy Code and, to the extent they show anything, it is that the Receiver's appointment by the Missouri Court took place in a rushed proceeding.[3]

At a minimum, Debtors should be permitted to use cash collateral in accordance with the relief requested in the Cash Collateral Motion, on an interim basis, pending a Final Hearing. As established by the Cash Collateral Motion and the evidence in support of it (which are hereby incorporated by this reference), including the Salu Decl., Debtors should be granted authority to use cash collateral on an interim basis pending a final hearing.

**B.    Debtors' Immediate Cash Needs**

Debtors set forth their initial 13-week budget in the Budget, attached as **Exhibit D** to the Omnibus Declaration. Aequum objects to the Budget as a whole, but has not pointed to any specific line expenses to which Aequum objects.[4] Nonetheless, and in effort to provide additional information, Debtors' hereby provide further detail regarding their immediate cash needs as further

---

[3] The prepetition appointment of a receiver by the Missouri State Court was rushed, to put matters mildly. At one point during the evidentiary hearing before the Missouri Court, Debtors' counsel stated, "it would be appropriate to stay this hearing and have time to collect best evidence." The Court expressly declined to stay the hearing. *See* LVCG ECF No. 36 at p. 21 of 82, tr. ll. 19-23; *see* ColorArt ECF No. 37 at p. 21 of 82, tr. ll. 19-23. Also during the evidentiary hearing in the State Court Case on the appointment of a receiver, the Court apparently also admonished counsel to move the matter along quickly. *See* LVCG ECF No. 36 at p. 35 of 82, tr. ll. 21-23; *see* ColorArt ECF No. 37 at p. 35 of 82, tr. ll. 21-23 ("Again, I'm trying to proceed as Your Honor admonished us to speed things along. Counsel is allowed to make his objections, but it's not going to be speedy"), and interrupted the Debtors' counsel's direct examination of his own witness (Mr. Salu), to advise the Court had an appointment and wanted to hear (Aequum's) cross examination of that same witness "before The Court has to leave at 2:45." *See* LVCG ECF No. 36 at p. 41 of 82, tr. ll. 1-6; *see* ColorArt ECF No. 37 at p. 41 of 82, tr. ll. 1-6 (after counsel attempts to reference an exhibit, "If I could have cross examination before The Court has to leave at 2:45.").

[4] Aequum has alleged that the receivables to be collected as set forth in the Budget are unsupported. Aequum has been provided with Debtors' aging A/R. A true and correct summary of the amounts to be collected in the relevant periods to support the accounts receivable collection is attached to the Salu Decl. **Exhibit "8."**

set forth in the Interim Budget, attached as **Exhibit "9"** to the Salu Decl., which is intended[5] to last for the three-week period through the Thanksgiving holiday and until this Court can hold a Final Hearing. Debtors have continued to pare down their immediate budget needs so that the interim relief requested is narrowly tailored and alleviates the concerns of the parties pending the Final Hearing.

As set forth in the Omnibus Declaration, collectively, Debtors operate three large scale production facilities: a facility in Las Vegas housing approximately ninety employees, a facility in Iowa housing approximately forty-five employees, and a facility in Missouri housing approximately forty employees. Through their printing facilities, Debtors print and distribute mailers for many well-known and recognized businesses, including affiliated entities, such as Growmail, LLC and Money Mailer, LLC, and print a wide variety of signage and other items for unaffiliated entities, such as Macy's, American Express, MixTiles, and Hello Fresh. In order to continue to generate income, Debtors have to fill the orders of these customers, which requires the immediate continued use of employees, vendors, and utility providers, the details for which are included in the Interim Budget. *See* Salu Decl. ¶ 44.

With respect to payroll, and as further set forth in the Wages Motion, Debtors sought $525,000 for immediately payroll needs. Debtors are now only seeking $299,602.88 for the payroll period ending October 31, 2025, which was scheduled to be paid on November 10, 2025. The remaining payroll for this initial pay period was satisfied through payment from Debtors' parent, JAL, which Debtors are not seeking to repay at this time. Debtors will have another payroll due on November 24, 2025, the week of Thanksgiving. While Debtors are working to operate to streamline operations and reduce staff, Debtors expect that, as set forth in the Budget, approximately $525,000 will be due to salaried and hourly workers on November 24, 2025. *See* Salu Decl. ¶¶ 45-46.

Based on the Interim Budget, Debtors request a total interim amount of $1,988,649 in order to continue operations pending a Final Hearing on the Cash Collateral Motion.

---

[5] Debtors reserve their rights to seek additional use of cash collateral from Aequum and/or this Court if Debtors determine that it becomes necessary to further stabilize for immediate operations.

C. **Aequum's Demand for Adequate Protection**

Aequum's opposition to the Cash Collateral Motion complains that Debtors have not offered adequate protection but ignore the extensive discussion within the Cash Collateral Motion that sets forth the sufficient adequate protection. *See generally*, Cash Collateral Motion. Specifically, continued operations to generate income that will not otherwise be available is alone enough to meet the adequate protection requirements as set forth by the Judge Bruce Markell in *In re Las Vegas Monorail Co.*, 429 B.R. 317, 341–42 (Bankr. D. Nev. 2010).

Even more, however, Debtors offered Replacement Liens and periodic payments during the 13-week period. Debtors have also set forth reporting requirements and otherwise offered to engage with Aequum regarding its adequate protection requests. Finally, notwithstanding the allegations to the contrary, Debtors have also sent payroll and inventory information, equipment lists, and aging receivable reports,[6] and otherwise repeatedly requested an open dialogue on any concerns. Aequum has failed to engage.

Aequum is not here acting in good faith. The true purpose and goal of Aequum's actions thus far in these Chapter 11 Cases has been laid bare in the Objection. Understanding that they are adequately protected, knowing that Debtors should continue to operate for the benefit of all interested parties, and knowing its wrongful acts pre-petition, Aequum seeks "a release in favor of Lender, in form and substance acceptable to Lender, of any prepetition claims against Lender." *See* Objection, ¶ 72(e). This request, (especially before it is even known if a committee will be appointed), and the other requests made in paragraph 72 of the Objection, are inappropriate and an attempt to continue to improperly leverage the legal and Chapter 11 process to the detriment of Debtors and their creditors.

/ / /

/ / /

---

[6] Aequum is already in possession of a majority of the information it has requested, but Debtors have provided the information again.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

## IV. CONCLUSION

WHEREFORE, Debtors respectfully request that the Court deny the Motion, grant the Cash Collateral Motion, and grant Debtors such other and further relief as is just and proper.

DATED this 12th day of November, 2025.

GARMAN TURNER GORDON LLP

By: */s/ Teresa Pilatowicz*
GREGORY E. GARMAN, ESQ.
TERESA M. PILATOWICZ, ESQ.
MARY LANGSNER, PH.D.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
[Proposed] *Counsel to the Debtors*