GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail:  ggarman@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail:  tpilatowicz@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
E-mail: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000
[Proposed] *Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>COLORART, LLC,<br><br>Debtor. | Case No.:25-16701-NMC<br><br>Chapter 11<br><br>Date:   November 13, 2025<br>Time:   11:30 p.m. |

**OPPOSITION TO RECEIVER'S MOTION UNDER SECTION 543(d) OF THE BANKRUPTCY CODE EXCUSING COMPLIANCE WITH SECTION 543 OF THE BANKRUPTCY CODE**

Debtors Las Vegas Color Graphics, Inc. ("LVCG") and ColorArt, LLC ("ColorArt"; together with LVCG, the "Debtors") hereby respectfully submit this initial[1] opposition ("Opposition") to the *Receiver's Motion Under Section 543(d) of the Bankruptcy Code Excusing Compliance with Section 543 of the Bankruptcy Code* (the "Motion") field by NBML Strategies, Soley in its capacity as court-appointed receiver in Missouri state court (the "Receiver").

/ / /

/ /

---

[1] Debtors are responding on an accelerated basis and reserve their rights to supplement this Opposition.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## INTRODUCTION

Section 543 of the Bankruptcy Code embodies a core bankruptcy principle: upon the filing of a voluntary petition, prepetition custodians must stand down and turn over estate property so that a debtor in possession can fulfill its fiduciary duties under sections 1107 and 1108, subject to this Court's supervision.

Section 543(d) is a narrow, discretionary exception. It allows a bankruptcy court, in limited circumstances and only when "the interests of creditors . . . would be better served," to excuse a receiver from the turnover and accounting obligations of Section 543(a)–(c).

The Receiver's Motion does not meet the requisite standard. The Receiver: (1) was appointed mere days before the Petition Date; (2) admits it has only obtained possession or control of limited property (certain bank accounts at CNB and miscellaneous records); (3) concedes it has been unable to take possession or control of the Debtors' businesses or operating assets; and (4) offers only vague "concerns" amounting to hearsay about historical conduct with no specific evidence of fraud, dishonesty, or current mismanagement in the chapter 11 cases.

By contrast, Debtors (1) properly commenced these Chapter 11 cases on November 5, 2025 in order to regain control of their assets and reorganize in a centralize forum; (2) have remained in possession of their businesses as debtors in possession, subject to this Court's oversight and the statutory duties imposed by section 1107; and (3) have already sought relief from this Court regarding use of cash, operations, and other first-day issues, creating a unified framework for administration of the estates.

In short, what best serves *all* creditors is *centralized, Court-supervised management by the Debtors in possession*, not continued fragmentation of control in favor of a state-court receiver whose role was barely underway when the cases were filed. Accordingly, the Motion should be denied and the Receiver should be directed to comply fully with section 543, including turning over all property of the Debtors in its possession, custody, or control and providing an accounting.

/ / /

## II.
## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 1001(b)(1). This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A),(E), and (O). Venue of the Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. Debtors continue to manage their property as debtors and debtors-in-possession pursuant to Sections 1107(a) and 1108.

3. Pursuant to Local Rule 9014.2, Debtors consent to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

## III.
## BACKGROUND[2]

**A.    The Receivership and the Chapter 11 Cases.**

4. On or about October 29, 2025, the Missouri state court entered an order appointing the Receiver over Debtors' property (the "Receivership Property") under the Missouri Commercial Receivership Act. *See* Omnibus Decl. ¶ 25.

5. Under that order, the Receiver was empowered to investigate, take possession, hold, and liquidate Receivership Property, including real and personal property and related books and records. *Id.*

6. On November 5, 2025 (the "Petition Date"), the Debtors each filed voluntary Chapter 11 petitions in this Court.

7. The Receiver concedes that it has "been unable to take possession and/or control of the Receivership Property." While the Receiver contends this was because of a lack of cooperation with management, this is not true. The fact is that the Debtors had complied with Receivers request

---

[2] A detailed description of the facts and circumstances of these Chapter 11 Cases is set forth in the Omnibus Decl. of Eran Salu filed at ECF No. 15 and is incorporated herein by this reference.

for a kick-off call but, before that could be finalized, determined to file these Chapter 11 Cases rendering any further turnover inappropriate.

**B.     The Limited Property Currently in the Receiver's Hands**

8.     As of the filing of the Motion, the Receiver identifies only a narrow set of assets in its possession or control (the "Property"):

    a.     Certain accounts of the Debtors at CNB Bank and related records;

    b.     Information regarding accounts at Wells Fargo provided by the prepetition Aequum, Aequum Capital Finance II, LLC (the "Aequum"); and

    c.     Miscellaneous records regarding the Debtors' operations provided by third parties.

**C.     The Debtors' Turnover Demand and Aequum's Objection**

9.     On November 5, 2025, Debtors' counsel sent the Receiver a written demand for turnover of estate property in compliance with section 543 (the "Debtor Demand"), with requested acknowledgment by November 6 and turnover by November 10.

10.     On November 6, 2025, Aequum's counsel emailed the Receiver's counsel objecting to any turnover or relinquishment of Receivership Property—specifically funds in the CNB accounts—absent an order from this Court.

11.     The Receiver thus acknowledges that funds in the CNB accounts are Estate property and that the Debtors need access to that information, and that it has been instructed by Aequum's counsel not to comply.

**D.     The Receiver's Motion**

12.     The Motion asks this Court to Excuse the Receiver from compliance with sections 543(a), (b), and (c) and allow the Receiver to retain possession, custody, and control of the limited Property; and excuse the Receiver from turning over the Property.

13.     The Motion relies principally on: (1) Aequum's objection to turn over cash; (2) the existence of "conflicting demands" on the Receiver by the Debtors and Aqueem; and (3) the Receiver's "concerns" about historical conduct of Debtors and their principals, while expressly conceding that its information is incomplete and that there "may be reasonable explanations" for its concerns.

14. The Receiver also requests that, if turnover is ordered, the Court direct payment of its fees and expenses—including those incurred in preparing and prosecuting the Motion—under section 543(c)(2).

## IV.
## LEGAL AUTHORITY AND ARGUMENT

**A.** <u>**Turnover is the Default; Excuse Under 543(d) is the Narrow Exception.**</u>

Under sections 1107 and 1108, a debtor in possession has all the rights and powers of a trustee, subject to this Court's supervision. Debtors in possession owe fiduciary duties to all creditors; operate within a comprehensive statutory framework; and are subject to oversight by the United States Trustee, creditor committees, and this Court. To comply with those duties, 11 U.S.C. § 543 provides, in pertinent part:

> (b) A custodian ***shall -***
>
> (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and
>
> (2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody or control of such custodian.

11 U.S.C. § 543(b) (emphasis added).

Upon learning of the commencement of a bankruptcy case, any pre-petition receiver is to cease activity and turn assets over to the trustee or debtor-in-possession, and the receiver may take no action unless expressly authorized by the Bankruptcy Court. *See In re North Port Dev. Co.*, 36 B.R. 19, 20 (Bankr. E.D. Mo. 1982). The property of the debtor in a receiver's possession is considered property of the estate under 11 U.S.C. § 541 and is to be turned over by any custodian pursuant to the provisions of 11 U.S.C. § 543. *See In re Redman Oil Company*, 95 B.R. 516, 521 (Bankr. S.D. Ohio 1988). It is also well understood that a Receiver must turn over property promptly. *See In re 245 Associates*, 188 B.R. 743, 753 (Bankr. S.D. N.Y. 1995). A receiver who

continues to exercise post-petition control over property of the estate without the bankruptcy court's authority does so unlawfully. *See id.*

Section 543(a) this prohibits a custodian from taking any action with respect to estate property after commencement of the case, except to preserve such property. Section 543(b) affirmatively requires the custodian to deliver to the trustee (here, the Debtors as debtors in possession) any property of the debtor held by or transferred to the custodian; and file an accounting of any such property and its administration. Section 543(d)(1) provides a narrow discretionary exception: the Court "may excuse" compliance with subsections (a), (b), and (c) *if the interests of creditors and, if appropriate, equity security holders, would be better served by permitting a custodian to continue in possession, custody, or control*.

If creditor interests truly require displacement of the Debtors, the Code provides specific tools: appointment of a trustee under section 1104, appointment of an examiner, conversion to chapter 7, or dismissal. But to permit a receiver to indefinitely remain in possession and to vest him permanently with all duties and powers of a debtor-in-possession goes far beyond the limited relief envisioned by Section 543 and circumvents the prohibition of 11 U.S.C. §105(b) against the appointment of receivers in lieu of a debtor-in possession or trustee. *See* 11 U.S.C. § 105(b); *In re Plantation Inn Partners*, 142 B.R. 561, 564 (Bankr. S. D. Ga. 1992).

**B.      The Receiver Has Not Met Its Burden Under Section 543(d)**

"Because the Bankruptcy Code contemplates turnover, the party seeking relief has the burden of all issues related to affirmative relief." *In re Northgate Terrace Apartments, Ltd*., 117 B.R. 328, 332 (Bankr. S.D. Ohio 1990). The basic equities generally favor a debtor-in-possession under §543 as, if nothing more, substantial weight is added to a debtor's burden of attempting to reorganize and promulgate an acceptable plan of reorganization if a debtor cannot have access to all of its assets, starting with an initial breathing spell. *Id*. at 333 (quoting *In re KCC-FUND V, LTD*., 96 B.R. 237, 239--40 (Bankr. W.D. Mo. 1989)). Unless there is a bad faith filing with no possibility of reorganization, grossly inept management of the assets, or fraudulent behavior, that burden will be hard to sustain. *Id.*

### 1. No Evidence of Current Mismanagement in Chapter 11

The Motion offers no concrete evidence that the Debtors are presently mismanaging the estates in chapter 11. There have been no missed filings, no misuse of cash collateral identified in the Chapter 11 Cases, no failure to maintain insurance or pay necessary operating expenses. There is likewise no credible argument that Debtors are ignoring Court orders or refusing to comply with their duties as debtors in possession.

Instead, the Receiver relies on generalized "concerns" about "historical conduct" of Debtors' principals, coupled with acknowledgment that there "may be reasonable explanations" and that information is incomplete. Vague concern is not enough to override Congress's default scheme that estate property be administered by a trustee or debtor in possession under the Bankruptcy Code, rather than by a state-court receiver.

### 2. The Receivership Was Barely Underway at the Petition Date

The Receiver was appointed on or about October 29, 2025—*just one week* before the Petition Date. The Receiver admits that it "has been unable to take possession and/or control of the Receivership Property" and only has limited access to certain bank accounts and records. There is no long-standing, stable receivership structure that creditors rely upon or that has successfully stabilized operations. Instead, there is a short-lived, incomplete process that overlaps with—but does not replace—the comprehensive chapter 11 framework now in place. Under these circumstances, the "status quo" that best serves creditor interests is the Chapter 11 process, not a barely implemented receivership.

### 3. The Receiver's Role Now Creates Duplicative Expense and Administrative Inefficiency

The Receiver no longer serves a purpose with respect to these claims. Yet, maintaining the Receiver in control of estate cash and records will increase administrative costs (Receiver fees on top of Chapter 11 professionals); Fragment decision-making between this Court and the Missouri state court; and complicate the Debtors' ability to comply with the Bankruptcy Code's reporting, cash management, and operating requirements. The Bankruptcy Code is specifically designed to

centralize control in one forum. Continued receivership control undermines that core policy and imposes unnecessary expense on the estates.

### 4. The Interests of All Creditors and Equity Holders—Not Just Aequum—Control the Section 543(d) Analysis

The Motion is driven largely by Aequum's objection, and instruction stating the same to the Receiver in violation of the stay, to turnover of funds at CNB. But section 543(d) focuses on the interests of all parties in interest, **not** on one secured creditor's desire to maintain leverage over cash. Conspicuously absent from the Receiver's analysis is the express requirement under § 543(d)(l) that the Court may excuse compliance with §§ 543(a), (b), or (c) "if the interests of creditors, and, if the debtor is not insolvent, of equity holders would be better served by permitting a custodian to continue in possession ..." 11 U.S.C. § 543(d)(l) (emphasis added). Indeed, the Receiver fails to discuss the interests of equity holders.

Nonetheless, the Receiver argues that it faces "conflicting demands" from the Debtors (seeking turnover) and Aequum (objecting to turnover) and thus needs the Court to excuse compliance. But the existence of a dispute between a debtor and a secured creditor is the **very reason** these cases are in this Court. Section 543 is designed so that (1) the custodian turns over property; and (2) this Court, not the receiver, adjudicates disputes regarding use of cash and creditor rights.

If Aequum has concerns about adequate protection or the use of cash collateral, those concerns are properly addressed through other mechanisms, which it is already pursuing including, but not limited to, its response to the cash collateral motions; request for adequate protection; request for budget and reporting requirements; and other tools within the Bankruptcy Code—not by outsourcing control of estate property to a state-court receiver.

Aequum would have this case cease before it even begins. But there are other creditor constituencies—including trade creditors, employees, landlords, and taxing authorities—who will benefit from continued operations, centralized Court supervision; a functioning debtor in possession; and access by the Debtors to necessary cash and records to preserve going-concern value and maximize recoveries.

Granting the Motion would invert that structure and, in effect, allow a prepetition secured creditor to *indirectly* veto turnover by influencing the receiver, instead of litigating its rights in this Court.

### 5. The Receiver's "Concerns" About Historical Conduct Are Not a Basis to Excuse Turnover

The Receiver references unspecified historical conduct and "concerns" about Debtors' principals, but (1) provides no detailed factual record; (2) acknowledges that it has "very limited information"; and (3) concedes there "may be reasonable explanation[s]" for its concerns. Vague assertions cannot support (1) excusing compliance with a clear statutory command; (2) maintaining estate property in the custody of a third party outside the centralized oversight of this Court.

If the Receiver believes specific misconduct occurred, it can share its information with the Debtors, the U.S. Trustee, and creditor constituencies. That process—transparency and litigation within the bankruptcy system—is far more consistent with creditor interests than a blanket 543(d) order.

## C. Even If Limited Relief Were Considered, the Receiver's Requested Relief Is Overbroad

The Motion asks the Court to excuse the Receiver from all obligations under sections 543(a)–(c) and allow the Receiver to retain all Property until further order. At a minimum, if the Court were inclined to entertain any relief (which Debtors submit it should not), any such order should be strictly limited in time and scope; preserve this Court's primary control over cash collateral, budgets, and operations; require full disclosure and accounting by the Receiver; and be subject to modification upon motion by any party in interest.

The Debtors respectfully submit that the more appropriate course is simply to deny the Motion and enforce the turnover and accounting obligations of section 543. To the extent the Court is not inclined ot do so, Debtors request further briefing and hearing.

## D. The Receiver's Fee Request Should Be Denied or Reserved

Section 543(c)(2) allows this Court, in its discretion, to provide for payment of reasonable compensation and reimbursement of actual, necessary expenses of the receiver. At this preliminary

stage the Receiver has had a very short tenure. The scope and benefit of its work to the estates has not been fully developed on the record; and the estates already face substantial administrative burdens in Chapter 11.

The Court should not pre-approve or guarantee payment of fees associated with prosecution of a Motion that seeks to deprive the estates of estate property and undermine centralized Chapter 11 administration. To the extent the Receiver seeks allowance and payment of fees, that request should be reserved for properly noticed fee applications; subject to objection by the Debtors and other parties in interest; and evaluated in light of the overall benefit (if any) of the receivership to these estates.

## V.
## CONCLUSION

WHEREFORE, Debtors respectfully request that the Court deny the Motion and grant Debtors such other and further relief as is just and proper.

DATED this 12th day of November, 2025.

GARMAN TURNER GORDON LLP


By: /s/ Teresa Pilatowicz
    GREGORY E. GARMAN, ESQ.
    TERESA M. PILATOWICZ, ESQ.
    MARY LANGSNER, PH.D.
    7251 Amigo Street, Suite 210
    Las Vegas, Nevada 89119
    [Proposed] Counsel to the Debtors