Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
Gabrielle A. Hamm, Esq.
Nevada Bar No. 11588
ghamm@nvfirm.com
Athanasios Agelakopoulos, Esq.
Nevada Bar No. 14339
aagelakopoulos@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: (702) 385-5544
Facsimile: (702) 442-9887

*and*

Kenneth J. Ottaviano (*pro hac vice* pending)
William J. Dorsey (*pro hac vice* pending)
Stephanie K. Hor-Chen (*pro hac vice* pending)
BLANK ROME LLP
444 West Lake Street, Suite 1650
Chicago, IL 60606
Telephone: (312) 776-2514
ken.ottaviano@blankrome.com
william.dorsey@blankrome.com
stephanie.horchen@blankrome.com

*Counsel to Aequum Financial Capital II LLC*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No. 25-16701-nmc |
| COLORART, LLC, | Chapter 11 |
| Debtor. | (Joint Administration Requested) |
| | **LIMITED OBJECTION AND RESERVATION OF RIGHTS OF AEQUUM CAPITAL FINANCIAL II LLC TO DEBTORS' EMPLOYEE COMPENSATION MOTION** |
| | Date: November 13, 2025<br>Time: 11:30 a.m. |

Aequum Capital Financial II LLC ("Aequum") in its capacity as senior secured lender (in such capacity, "Lender"), by and through its attorneys, Blank Rome LLP and Schwartz Law, PLLC,

1

respectfully submits this Objection (this "Objection") to *Debtors' Emergency Motion for Entry of an Order: (I) Authorizing Payment of Employee Compensation; and (II) Authorizing and Directing Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations* (the "Employee Compensation Motion")[1] filed by the above-captioned debtor and debtor-in-possession (together with Las Vegas Color Graphics, Inc., debtor and debtor-in-possession in Case No. 25-16697-NMC, the "Debtors"). In support of this Objection, Lender relies upon the *Declaration of Eugene Ruggles in Support of Aequum Capital Financial II LLC Objection and Reservation of Rights of Aequum Capital Financial II LLC to Debtors' Emergency Motion Pursuant to 11 U.S.C. §§ 105, 361, 363, and 506, and Fed. R. Bankr. P. 4001(b) for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Scheduling a Final Hearing* [ECF No. 38] (the "Lender Dec."), and the exhibits annexed thereto, and represents as follows:

**PRELIMINARY STATEMENT**

1. By the Employee Compensation Motion, Debtors seek final authority to use Lender's cash collateral to pay wages, salaries, and related obligations to 220 individuals described as "employees." While Lender recognizes the importance of maintaining ongoing business operations and does not object in principle to reasonable measures necessary to preserve the value of Debtors' estates, Debtors bear the burden of demonstrating both the necessity and propriety of the proposed payments.

2. Debtors have failed to make that showing. It is unclear whether the individuals for whom payment is sought are, in fact, employees of either Debtor or whether they are employees of one or more of the more than 70 other entities owned, operated, and staffed by Debtors' parent company. The parent company is owned and controlled by Eran Salu, who controls and manages the operations of both Debtors and such non-Debtor affiliates. In light of this extensive and overlapping corporate structure, Debtors should be required to demonstrate that the individuals to be paid are exclusively or properly employees of Debtors and that the proposed payments are true expenses of Debtors' estates.

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Employee Compensation Motion.

3.      Absent a clear evidentiary record establishing the status and roles of these purported employees, the amounts proposed to be paid to each employee, and the benefit to Debtors' estates resulting from such payments, Debtors should not be permitted to use Lenders' cash collateral to finance these payments. Accordingly, the relief sought by the Employee Compensation Motion should be adjourned pending a full evidentiary showing or should be otherwise denied in its entirety.

## BACKGROUND[2]

4.      On November 5, 2025 (the "Petition Date"), Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5.      On November 7, 2025, Debtors each filed various "First-Day Motions", including an Employee Compensation Motion, pursuant to which Debtors seek authority to: (1) pay Wage Obligations in an aggregate amount of $506,987 and any costs incident thereto; (2) remit Deductions, Garnishments, Payroll Taxes, and Employee Benefit Contributions, to the applicable state or federal taxing authorities, law firms, governmental agencies, or plan sponsor tasked with collecting such funds; and (3) pay Reimbursable Expenses not exceeding $10,000.

6.      As the sole evidentiary support for the requested relief, Debtors attach as Exhibit 2 a list of purported "employees" containing only two data points: each individual's name and, presumably, the associated Debtor "employer." The list notably omits each individual's title, position, job function, and the amount of compensation sought to be paid.[3] Consequently, Lender, the Court, and other interested parties have no basis to verify the legitimacy of these individual's employment with Debtors, the necessity of the proposed payments, or the propriety of the compensation sought to be paid to such individuals.

---

[2] On November 10, 2025, Lender filed its *Objection and Reservation of Rights of Aequum Capital Financial II LLC to Debtors' Emergency Motion Pursuant To 11 U.S.C. §§105, 361, 363, And 506, And Fed. R. Bankr. P. 4001(b) For Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Scheduling a Final Hearing* (the "Cash Collateral Objection"). To avoid a recitation of the same lengthy historical relationship between Lender and Debtors, Lender incorporates herein by reference the background as set forth in the Cash Collateral Objection.

[3] On November 10, 2025, counsel for Debtors (a) advised Lender's counsel that JAL purportedly paid a portion of the payments requested in the Employee Compensation Motion and (b) provided Lender's counsel an Excel spreadsheet purportedly identifying which individuals were paid by JAL, along with each individual's job title, location, and amount owed. However, no supporting documentation or source verification was provided, rendering such information unverified and unreliable.

3

7. It is unclear whether the individuals identified as "employees" are actually employed by either Debtor, or instead by one of the numerous affiliated entities owned, operated, and staffed by Debtors' parent company, JAL Equity Corp. ("JAL"). JAL, which is owned and operated by Debtors' principal Eran Salu ("Salu"), is also the parent of approximately 70 other related entities. Indeed, the employee list includes 3 employees located in Amarillo, Texas, a location that has been closed, and 4 individuals who are identified on non-Debtor affiliate Money Mailer's website as members of its executive team: (a) Steve Sojka - Vice President of Franchising & Marketing at Money Mailer; (b) Nick Howard – Vice President of Corporate Revenue, (c) Jason Belskus – Vice President of Information Technology, and (d) Cindy Moser – Director of Production. *See* https://moneymailerfranchise.com/meet-the-team/.

8. Moreover, 33 of Debtors' affiliates are also parties to the Shared Services Agreement (as defined below) under which Debtors allegedly employed the listed individuals, further highlighting the risk of commingling of employees, payroll obligations, and other expenses. This extensive and overlapping corporate structure underscores the need for Debtors to establish that the individuals to be paid are bona fide employees of Debtors and that the requested payments are legitimate obligations of Debtors' estates.

9. Lender's concern is heightened by the fact that certain individuals identified on the employee list have previously represented that they are not employed by Debtors, but instead work for their non-Debtor affiliates, including MoneyMailer and Marketing.com. This further underscores the uncertainty regarding the true employment status of the individuals proposed to be paid and raises significant questions about whether the requested payments are proper obligations of Debtors' estates.

10. It is also unclear whether Debtors businesses are actively operating or whether they still maintain the number of employees alleged in the Employee Compensation Motion. More specifically, at an in-person meeting at the Eureka, Missouri plant in September 2025, Lender's representatives observed minimal activity, with no machinery in operation, only a skeleton staff working, and limited inventory onsite. Lender Dec. ¶ 36. At a more recent site visit by the Debtors' court-appointed receiver at another facility, the receiver observed only two staff members on site,

4

both of whom explained that they work for non-Debtor Marketing.com, not Debtors. These observations raise substantial questions about the accuracy of Debtors' representations regarding employee headcount and the necessity of the proposed payments.

11.     Finally, under the applicable governing documents, the obligation to provide compensation and employee benefits for individuals performing services for Debtors rests with JAL, not Debtors. As a condition to Lender's agreement to lend under the Credit Agreement, JAL executed that certain Support Agreement dated as of June 6, 2024 (the "Support Agreement"), pursuant to which JAL agreed to continue to provide to Debtors, *inter alia*, certain general management services, treasury and tax services (including payroll), and various other employee-related services previously agreed to pursuant to that certain Shared Services Agreement between JAL and Debtors dated January 1, 2025 (the "Shared Services Agreement").[4] *See generally,* Support Agreement. Under the Shared Services Agreement, JAL, not the Debtors, is responsible for administering payroll, providing employee benefits, and paying employee costs. *See* Shared Services Agreement § 1.7.

**LIMITED OBJECTION**

12.     To be clear, Lender does not object to the payment of Debtors' verified employees. However, to enable the Court, Lender, and other parties in interest to properly evaluate the Employee Compensation Motion, Debtors must first provide explanatory and verifiable information on the requested relief. Specifically, Lender requires information concerning each individual's actual employment status, the identity of the respective Debtor-employer, the proposed payments to each individual, the benefit of such payments to Debtors' estates, and whether any individual will receive an amount that exceeds the statutory cap available under section 507(a)(4) of the Bankruptcy Code. While Lender continues to work with Debtors to promptly resolve these issues, without a clear understanding of the basic provisions of the Employee Compensation Motion, neither Lender, the Court, nor other parties in interest have the information needed to determine whether the requested relief is appropriate.

---

[4] A copy of the Shared Services Agreement was attached to the *Omnibus Declaration of Eran Salu in Support of Chapter 11 Petitions and First Day Motions* [ColorArt Docket No. 15; LVCG Docket No. 16] as Exhibit E.

13. Further, as explained in Lender's objection [ColorArt Docket No. 35; LVCG Docket No. 26] to the *Debtors' Emergency Motion Pursuant to 11 U.S.C. §§ 105, 361, 363, and 506, and Fed. R. Bankr. P. 4001(b) for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Scheduling a Final Hearing* [ColorArt Docket No. 12; LVCG Docket No. 15] (the "Cash Collateral Motion"),[5] the arguments within which are incorporated by reference herein, Lender does not consent to the use of Lender's cash collateral absent adequate protection. Lender's collateral position is already significantly harmed by Salu's brazen diversion of Lender's collateral, both pre-petition, post-receivership, and post-petition. Lender simply cannot agree to any further diminution in its collateral absent clear and verifiable evidence regarding the Employees to which Debtors request the authority to compensate with Lender's cash collateral.

14. Moreso, Lender has no obligation to fund Debtors' Employee Obligations, because the obligations are those of JAL, not Debtors. As set forth in the Shared Services Agreement, JAL is responsible for the timely payment of all Wages (Shared Services Agreement §1.7(a)); the provision of Employment Benefits (Shared Services Agreement §1.7(b)); the provision of all Insurance (Shared Services Agreement §1.7(c)); the provision of all Termination Benefits (Shared Services Agreement §1.7(d)); and the reimbursement of all Employee Expenses (Shared Services Agreement §1.7(e). JAL's obligations remain unchanged and, as provided by the Bankruptcy Code, JAL is required to continue to perform under the Shared Services Agreement. *See*, 11 U.S.C. §362, 365.

15. Accordingly, the Employee Compensation Motion should be adjourned until Debtors provide full and verifiable information supporting the requested payments, or, failing such showing, the Employee Compensation Motion should be denied.

---

[5] Cash Collateral Motion refers to *Debtors' Emergency Motion Pursuant to 11 U.S.C. §§ 105, 361, 363, and 506, and Fed. R. Bankr. P. 4001(b) for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Scheduling a Final Hearing* [ColorArt Docket No. 12; LVCG Docket No. 15].

**RESERVATION OF RIGHTS**

16. This Objection is submitted without prejudice to, and with a full reservation of, Lender's right to supplement and amend this Objection and to further object to the Employee Compensation Motion on any grounds that may be appropriate.

WHEREFORE, for all the foregoing reasons, Lender respectfully requests that this Court deny the Employee Compensation Motion or adjourn the hearing pending adequate support for the requested relief, and grant any such other relief as the Court deems just and proper.

[*Signatures on the Following Page*]

Dated: November 12, 2025    Respectfully submitted,

/s/ *Samuel A. Schwartz*
Samuel A. Schwartz (NSBN 10985)
Gabrielle A. Hamm (NSBN 11588)
Athanasios Agelakopoulos (NSBN 14339)
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: (702) 802-2207
saschwartz@nvfirm.com
ghamm@nvfirm.com
aagelakopoulos@nvfirm.com

-and-

Kenneth J. Ottaviano (*pro hac vice* pending)
William J. Dorsey (*pro hac vice* pending)
Stephanie K. Hor-Chen (*pro hac vice* pending)
444 West Lake Street, Suite 1650
Chicago, IL 60606
Telephone: (312) 776-2514
ken.ottaviano@blankrome.com
william.dorsey@blankrome.com
stephanie.horchen@blankrome.com

*Attorneys for Aequum Capital Financial II LLC*