Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
Gabrielle A. Hamm, Esq.
Nevada Bar No. 11588
ghamm@nvfirm.com
Athanasios Agelakopoulos, Esq.
Nevada Bar No. 14339
aagelakopoulos@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: (702) 385-5544
Facsimile: (702) 442-9887

   *and*

Kenneth J. Ottaviano (*pro hac vice* pending)
William J. Dorsey (*pro hac vice* pending)
Stephanie K. Hor-Chen (*pro hac vice* pending)
BLANK ROME LLP
444 West Lake Street, Suite 1650
Chicago, IL 60606
Telephone: (312) 776-2514
ken.ottaviano@blankrome.com
william.dorsey@blankrome.com
stephanie.horchen@blankrome.com

*Counsel to Aequum Capital Financial II LLC*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No. 25-16697-nmc |
| COLORART, LLC., | Chapter 11 |
| Debtor. | (Joint Administration Requested) |
| | **OST REQUESTED**<br>**OST REQUESTED** |

**AEQUUM CAPITAL FINANCIAL II LLC'S MOTION FOR ENTRY OF AN ORDER
(I) APPOINTING A CHAPTER 11 TRUSTEE UNDER 11 U.S.C. § 1104(a), OR,
IN THE ALTERNATIVE, (II) CONVERTING THESE CASES TO
<u>CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(b)</u>**

Aequum Capital Financial II LLC ("<u>Lender</u>"), by and through its undersigned counsel,

respectfully moves (this "<u>Motion</u>") the Court for entry of an order (i) appointing a chapter 11 trustee

pursuant to Section 1104 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>") over

ColorArt LLC ("ColorArt") and Las Vegas Color Graphics, Inc. ("LVCG" and together with ColorArt, "Debtors"), or in the alternative, (ii) directing the conversion of Debtors' above-captioned Chapter 11 cases (together, these "Chapter 11 Cases") to cases under Chapter 7 pursuant to Section 1112(b) of the Bankruptcy Code. In support of this Motion, Lender relies upon the the *Declaration of Eugene Ruggles in Support of Aequum Capital Financial II LLC Objection and Reservation of Rights of Aequum Capital Financial II LLC to Debtors' Emergency Motion Pursuant to 11 U.S.C. §§ 105, 361, 363, and 506, and Fed. R. Bankr. P. 4001(b) for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Scheduling a Final Hearing* [ColorArt Docket No. 38, LVCG Docket No. 37] (the "Lender Dec.") and represents as follows:

## PRELIMINARY STATEMENT

1.      The immediate appointment of a Chapter 11 trustee in these Chapter 11 Cases is necessary to protect not only the Lender's collateral--which has substantially diminished and continues to be diminished at the malicious hands of Debtors' principal Eran Salu ("Salu")—but also the broader interests of all creditors. Lender is the senior secured lender to Debtors and is currently owed in excess of $26 million on a defaulted loan. Prior to the Petition Date, in addition to myriad payment, reporting, and covenant defaults, Lender learned that Debtors had engaged in a scheme to vastly overstate the value of the collateral for this asset-based loan, locked Lender out of any ability to independently verify the value and extent of its collateral, and have ***admitted*** that Debtors, under Salu's direction, had begun diverting funds to other businesses owed by Salu to avoid paying back Lender's loan.

2.      Despite a state court in Missouri granting the appointment of a receiver of and over Debtors and their assets, Salu continued to systematically divert Debtors' cash and receivables away from Lender, in complete contravention of the Loan Documents, the Receivership Order, and the Bankruptcy Code. Salu simply lacks the trustworthiness and competence to continue managing Debtors' estates as a fiduciary acting as the representative of Debtors' bankruptcy estates under sections 323(a), 1101, 1106, and 1107 of the Bankruptcy Code is legally commanded to do. This misconduct not only jeopardizes Lender's collateral but also threatens the value of the bankruptcy estates as whole, to the detriment of all creditors. Once cause is established, as is the case here, the

1    express text of section 1104(a) activates the mandatory duty to appoint a Chapter 11 case trustee

2    through the statute's use of the mandatory auxiliary verb "shall." 11 U.S.C. § 1104(a).

3         3.    The appointment of a neutral Chapter 11 trustee is necessary to any prospect of a

4    successful reorganization in these Chapter 11 Cases. Unlike Salu, a Chapter 11 trustee would fulfill

5    the fiduciary duties owed to Debtors' estates and creditors. A Chapter 11 trustee would act

6    independently to investigate and pursue claims, including the avoidance and recovery of Salu's

7    inappropriate and unapproved diversions of estate assets, and would engage in good faith

8    negotiations with creditors, including Lender. Here, the Court should consider that, by operation of

9    Section 1107(a) of the Bankruptcy Code, the Debtors, as debtors in possession, are expressly

10   excused by statute from performing statutory duties that would ordinarily be assigned to a Chapter

11   11 case trustee by, among other provisions, sections 1106(a)(3) and (a)(4) of the Bankruptcy Code.

12   Included among those statutory duties are (a) the duty to "investigate the acts, conduct, assets,

13   liabilities, and financial condition of the debtor, the operation of the debtor's business and the

14   desirability of the continuance of such business, and any other matter relevant to the case or to the

15   formulation of a plan" and (b) to "file a statement of any investigation conducted under paragraph

16   (3) of this subsection, *including any fact ascertained pertaining to fraud, dishonesty, incompetence,*

17   *misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to*

18   *a cause of action available to the estate*." 11 U.S.C. §§ 1106(a)(3) and (a)(4)(A) (emphasis added).

19        4.    The Debtors' admission to diverting Lender's Collateral places the statutory duties

20   of a Chapter 11 trustee squarely at the forefront of this case and makes investigation of the Debtors'

21   acts critical to the ability of these bankruptcy estates and the business to be reorganized with the

22   disclosure and transparency mandated by the Bankruptcy Code. The need for an impartial Chapter

23   11 trustee to conduct the investigative duties set forth in sections 1106(a)(3) and (a)(4)(A) also

24   makes appointment of trustee warranted under section 1104(a)(2) of the Bankruptcy Code as an act

25   that is in the interests of creditors and other stakeholders in the Debtors' bankruptcy estates. In

26   short, the appointment of a Chapter 11 trustee would provide Debtors' creditors with transparency

27   and confidence in the management of Debtors' estates, thereby protecting the interests of all

28   creditors and preserving the value necessary for a legitimate reorganization.

5.    Alternatively, should the Court decline to appoint a Chapter 11 trustee, Lender submits that the record establishes ample cause to convert these Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code. Only through such relief can these Chapter 11 Cases proceed with the transparency, accountability and oversight that Debtors have failed to provide.

**JURISDICTION**

6.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

7.    Venue of the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.    The statutory predicates for the relief requested herein are sections 105, 305, 349, 1104, 1106, 1107, and 1112(b) of the Bankruptcy Code and related Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

**BACKGROUND[1]**

9.    On November 5, 2025 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

10.    On November 7, 2025, given Debtors' delay in filing the customary "First-Day Motions," Lender filed its motion to prohibit the use of cash collateral [ColorArt Docket No. 10; LVCG Docket No. 15] (the "Lender Cash Collateral Motion"). Simultaneously, Debtors filed, among other things, (a) *Debtors' Emergency Motion Pursuant to 11 U.S.C. §§ 105, 361, 363, and 506, and Fed. R. Bankr. P. 4001(B) for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Scheduling a Final Hearing* (the "Cash Collateral Motion"), (b) *Debtors' Emergency Motion for Entry of an Order: (I) Authorizing Payment of Employee Compensation; and (II) Authorizing and Directing Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations* (the "Employee Compensation Motion") and (c) *Debtors'*

---

[1] A detailed description of the historical relationship between Lender and the Debtors, including details of the Credit Agreement and Debtors' defaults under the same, the appointment of the Receiver, and Debtors' pre-petition and post-receivership brazen mismanagement, is set forth in the Cash Collateral Objection (as defined below), and is incorporated by reference herein. Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Cash Collateral Objection.

omnibus declaration in support of these Chapter 11 cases and first day motions (the "First Day Declaration").

11.    On November 11, 2025, Lender filed its objection to the Cash Collateral Motion (the "Cash Collateral Objection") and on November 12, 2025, Lender filed its objection to the Employee Compensation Motion (the "Employee Compensation Objection").

12.    As described in detail in the Cash Collateral Objection, the budget submitted in support of Debtors' request for use of Lender's cash collateral is wholly unsubstantiated and inconsistent with Debtors' own historical financial statements. To date, no verified supporting information for the budget has been produced in response to Lender's requests that would substantiate the alleged funding needs and sources identified in Debtors' proposed budget, and Debtors have refused to make Salu or the accounting personnel available to provide necessary explanations, evidentiary support, and much needed transparency. Without any credible evidentiary support for the proposed budget, neither Lender nor this Court can have any confidence that Debtors—who have repeatedly demonstrated that they have no intention of acting in good faith, adhering to the terms of the Credit Agreement, or any court order—can or will adhere to this proposed budget, or even the direction of this Court.

13.    Similarly, the Employee Compensation Objection was supported only by an unsubstantiated list of purported "employees" containing only two data points: each individual's name and, presumably, the associated Debtor "employer." The list notably omits each individual's title, position, job function, and the amount of compensation sought to be paid.[2] As a result, it is unclear whether the individuals identified as "employees" are actually employed by either Debtor, or instead by one of the numerous affiliated entities owned, operated, and staffed by Debtors' parent company, JAL. In addition, the purported employee list includes 3 employees located in Amarillo, Texas, a location that has been closed, and 4 individuals who are identified on non-Debtor affiliate

---

[2] On November 10, 2025, counsel for Debtors (a) advised Lender's counsel that JAL purportedly paid a portion of the payments requested in the Employee Compensation Motion and (b) provided Lender's counsel an Excel spreadsheet purportedly identifying which individuals were paid by JAL, along with each individual's job title, location, and amount owed. However, no supporting documentation or source verification was provided, rendering such information unverified and unreliable.

Money Mailer's website as members of its executive team: (a) Steve Sojka – Vice President of Franchising & Marketing at Money Mailer; (b) Nick Howard – Vice President of Corporate Revenue, (c) Jason Belskus – Vice President of Information Technology, and (d) Cindy Moser – Director of Production. *See* https://moneymailerfranchise.com/meet-the-team/. These glaring omissions and inconsistencies underscore Debtors' continued lack of transparency and good faith.

14.    Debtors' conduct both before and after the Petition Date raises grave concerns about their honesty, integrity and fitness to remain in control of their estates. Their repeated pattern of concealment and misrepresentation—particularly their admitted diversion of Lender's cash collateral—demonstrates a fundamental disregard for their fiduciary obligations as debtors in possession. Indeed, the Debtors' admission of diverting Lender's cash collateral to other non-debtor insiders/affiliates bears badges of an actual fraud. Such misconduct not only erodes the confidence of creditors and the Court in Debtors' ability to fulfill their statutory duties, but also threatens the integrity of the Chapter 11 process. When the very individuals charged with safeguarding estate assets engage in deceptive and obstructive practices, the appointment of an independent Chapter 11 trustee is justified and essential to protect creditors, preserve estate value, and restore transparency to these cases. It is critically important, therefore, that the statutory duties set forth in Section 1106(a)(3) and 1106(a)(4)(A) of the Bankruptcy Code be activated and discharged through the appointment of a neutral and trustworthy Chapter 11 trustee. Cause for relief, therefore, exists under both sections 1104(a) and 1112(b) of the Bankruptcy Code. Lender respectfully submits that relief should issue under either of those statutory provisions. Denying Lender's requested relief would leave the fox in charge of the henhouse, to the detriment of all non-insider and non-debtor stakeholders in these cases.

## RELIEF REQUESTED

15.    By this Motion, Lender respectfully requests that the Court enter an order (a) appointing a chapter 11 trustee for Debtors pursuant to section 1104(a) of the Bankruptcy Code, or, in the alternative, (b) converting these Chapter 11 Cases to chapter 7.

**BASIS FOR RELIEF REQUESTED**

**I.      A CHAPTER 11 TRUSTEE SHOULD BE APPOINTED OVER DEBTORS.**

16.     The record plainly demonstrates that "cause" exists for the appointment of a Chapter 11 trustee under Section 1104(a)(1) of the Bankruptcy Code. In addition, appointment of a Chapter 11 trustee is independently warranted under section 1104(a)(2) of the Bankruptcy Code, as it serves the best interests of Debtors' creditors and their estates.

**A.      Legal Standards Governing the Appointment of a Chapter 11 Trustee.**

17.     Section 1104 of the Bankruptcy Code governs the appointment of a bankruptcy trustee in a Chapter 11 case, providing the grounds on which a court may, or is required, to order such appointments. 11 U.S.C. § 1104. Section 1104(a) provides that the bankruptcy court <u>shall</u> order the appointment of a Chapter 11 trustee:

> (a)     At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
>
> (1)     *for cause, including fraud, dishonesty, incompetence, or gross mismanagement* of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2)     *if such appointment is in the interests of creditors*, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a) (emphasis added).

18.     Section 1104(a) is phrased in the disjunctive, meaning that there are two independent predicates for the appointment of a Chapter 11 trustee. *In re Corona Care Convalescent Corporation*, 527 B.R. 379, 384 (Bankr. C.D. Cal. 2015). Section 1104(a)(1) of the Bankruptcy Code provides for the *mandatory* appointment of a trustee when "cause" exists. *See* 11 U.S.C. § 1104(a)(1); *Official Comm. Of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.)*, 285 B.R. 148, 158 (Bankr. D. Del. 2002).

19.     Additionally, Section 1104(a)(2) of the Bankruptcy Code affords the Court a more flexible standard whereby, without regard to statutory "cause," the Court has discretion to appoint a trustee when such appointment is in the best interests of the parties. *See* 11 U.S.C. § 1104(a)(2); *In re Sharon Steel Corp.*, 86 B.R. 455, 458 (Bankr. W.D. Pa. 1988) (explaining that "if there is insufficient cause to appoint a trustee under § 1104(a)(1), or if the cause cannot be proven, a trustee may still be appointed [under section 1104(a)(2] if it is in the interest of creditors, some group of equity security holders, and other interests of the estate").

**B.     "Cause" Exists to Appoint a Chapter 11 Trustee Under Section 1104(a)(1).**

20.     While section 1104(a)(1) of the Bankruptcy Code expressly identifies four bases upon which "cause" may be found—fraud, dishonesty, incompetence, and gross mismanagement— those enumerated grounds are not exclusive, and the Bankruptcy Code grants courts discretion in the decision whether "cause" exists to appoint a trustee to protect creditors while also affording debtors a chance of reorganizing. *See Marvel Entm't Group*, 140 F.3d 463, 472-73 (3d Cir. 1988) (noting that it is within the discretion of the bankruptcy court to appoint a trustee for reasons not enumerated in the Bankruptcy Code). The categories enumerated in 11 U.S.C. § 1104(a)(1) "cover a wide range of conduct" and, thus, are best described as illustrative, rather than exclusive. *Id.* at 472.

21.     The determination of whether cause exists must be taken on a case-by-case basis, taking into account all relevant factors. *See In re V. Savino Oil & Heating Co.*, 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989) ("[T]he words 'including' and 'or similar cause' before and after the enumerated examples of cause . . . indicate that the grounds for appointing a reorganization trustee are not even limited to the derelictions specifically enumerated.").

22.     The cause analysis for appointing a trustee addresses management's prepetition and postpetition misdeeds or mismanagement and the interest of creditors analysis provides the court with "particularly wide discretion" to appoint a trustee even absent wrongdoing or mismanagement. *In re Bellevue Place Assocs.*, 171 B.R. 615, 623 (N.D. Ill. 1994). Prepetition conduct alone may provide the basis for a court to appoint a trustee. *See In re Rivermeadows Assocs., Ltd.*, 185 B.R. 615, 619 (Bankr. D. Wyo. 1995). Further, evidence that the current management grossly

8

mismanaged the debtor's affairs prior to filing is cause for appoint of a trustee. *In re Crescent Beach Inn, Inc.*, 22 B.R. 155, 159 (Bankr. D. Me. 1982).

23.    This is a textbook example of conduct establishing cause for the appointment of a Chapter 11 trustee as the record clearly evidences all of the enumerated examples of conduct that amount to cause: fraud, dishonesty, incompetence, and gross mismanagement. At every turn, Debtors, at Salu's direction, have acted in bad faith to defraud Lender into lending more money and to conceal the true state of their assets and operations. Debtors intentionally double-counted invoices to overstate their availability and improperly double-counted equipment as eligible receivables before contracts were signed and outside of their core business, while simultaneously seeking to borrow based on that same, purportedly sold equipment. When Lenders attempted to verify their receivables, Debtors refused to give Lender access or valid customer email addresses. When Lender was actually able to connect with Debtors' customers, the only responding customer, an affiliate, explained that $2.6 million in invoices "do NOT exist," while the remaining $20 million plus of receivables were unverifiable. Debtors also refused to provide financial projections, proper access to Debtors' facilities, or updated Borrowing Base Certificates. Most significantly, Debtors opened secret bank accounts to divert millions of dollars, deliberately placing funds beyond Lender's visibility and control.

24.    When Lender sought the support of the Missouri state court, which ultimately entered the Receivership Order in response to Debtors' bad faith conduct, Debtors continued to refuse to cooperate, ***despite a court order to do so***. Debtors refused to turn over assets to the Receiver and intentionally withheld operational and financial information necessary for the Receiver to implement the Receivership Order. And, again, Debtors continued to divert funds even from the Receiver and the receivership estate. Debtors have made clear that ***they have no intention of complying with court orders***, raising serious concerns about their ability or willingness to abide by any orders entered by this Court.

25.    Since the Petition Date, Debtors have continued to evidence their lack of ability and/or willingness to manage these Chapter 11 Cases competently. The budget submitted by Debtors in support of their Cash Collateral Motion is wholly unreliable. It is cursory, inconsistent

with historical financials, and lacks any verifiable support.

26.     The Employee Compensation Motion is another example of Debtors' post-petition mismanagement of their estates. As noted above, as the sole evidentiary support for the relief requested in the Employee Compensation Motion, Debtors attach as Exhibit 2 a list of purported "employees" which omits critical and verifiable information, such as each individual's title, position, job function, and the amount of compensation sought to be paid, and even included individuals employed with non-Debtor affiliates and a closed location. Simply put, it is not clear to Lender (i) who, exactly, stands to be paid pursuant to the Employee Compensation Motion, (ii) what amount(s) any such entity stands to be paid, or (iii) whether or to what extent any insider(s) stand to benefit from the relief sought through the Employee Compensation Motion. These deficiencies demonstrate that Debtors cannot be relied upon to provide accurate or complete information regarding the most rudimentary and basic aspects of administration of their estates, further justifying the appointment of a neutral Chapter 11 trustee.

27.     Absent strict oversight or the direction of an independent fiduciary, there is every reason to believe Debtors will continue to operate in contravention of the Credit Agreement and the requirements of this Court. Accordingly, sufficient cause exists for the appointment of a chapter 11 trustee under section 1104(a)(1) of the Bankruptcy Code.

**C.     Appointment of a Chapter 11 Trustee is in the Best Interests of the Creditors.**

28.     There is, separately, sufficient grounds to also appoint a Chapter 11 trustee under section 1104(a)(2) of the Bankruptcy Code because the replacement of Salu with an independent, disinterested, court-appointed fiduciary would benefit all of Debtors' creditors and other non-insider stakeholders of the Debtors' bankruptcy estates.

29.     Whether to appoint a trustee under section 1104(a)(2) of the Bankruptcy Code is assessed according to a flexible standard that allows for the appointment of a trustee even where no cause exists under section 1104(a)(1). *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989); *see also In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). Simply put, section 1104(a)(2) gives the Court "discretion to appoint a trustee when doing so would serve the parties' and the estates' interests." *In re Ashley River Consulting, LLC*, No. 14-13406

10

(MG), 2015 WL 1540941, at *11 (Bankr. S.D.N.Y. Mar. 31, 2015) (quoting *In re Marvel*, 140 F.3d at 474). This is a fact-driven analysis under the Court's broad equity powers. *See, e.g., In re Soundview Elite, Ltd.*, 503 B.R. 571, 582-83 (Bankr. S.D.N.Y. 2014). When evaluating appointment of a trustee under the "best interest" prong, the Court should "eschew rigid absolutes and look to the practical realities and necessities," *In re Hotel Associates, Inc.*, 3 B.R. 343, 345 (Bankr. E.D. Pa. 1980), by considering the following four factors:

> (a) the trustworthiness of the debtor;
>
> (b) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation;
>
> (c) the confidence – or lack thereof – of the business community and of creditors in present management; and
>
> (d) the benefits derived by the appointment of a trustee, balanced against the costs of appointment.

*In re Colorado-UTE Electric Ass'n*, 120 B.R. 164, 176 (Bankr. D. Colo. 1990) (citing *In re Ionosphere Club*, 113 B.R. at 168).

30.     Here, all of these factors compel the conclusion that appointment of a Chapter 11 trustee to take control of Debtors' bankruptcy estates is in the best interests of creditors and the estates. As detailed above, Debtors' rampant conversion of Lender's cash collateral, abject refusal to provide verifiable information about the business and its employees, repeated misrepresentations, and brazen violation of prior court orders make clear that Debtors cannot be trusted with whatever remains of their businesses or to act, as they are commanded by the Bankruptcy Code, as fiduciaries of their bankruptcy estates.

31.     Debtors have also failed to establish their ability to reorganize. Debtors' proposed budget, which is the sole instrument upon which they rely to evidence their ability to operate during the pendency of these Chapter 11 Cases, is wholly unreliable. It is cursory, inconsistent with historical financials, and lacks any verifiable support. Any reliance on such a budget is entirely illusory in light of Debtors' pre-petition and post-petition conduct. Relatedly, it is unclear whether Debtors even have operating businesses to fund.

32.     Given the totality of the circumstances, the scales tip decidedly in favor of

appointing a Chapter 11 trustee under section 1104(a)(2) of the Bankruptcy Code. A Chapter 11 trustee will provide essential financial and operational controls that are lacking under Debtors' management, including the faithful performance of the statutory duties set forth in sections 1106(a)(3) and 1106(a)(4)(A) of the Bankruptcy Code. Appointment of a trustee will also send a strong signal to trade creditors that the mismanagement is at an end. Indeed, a neutral and professional third party is necessary to allow the distrust and animosity between, at least, Lender and Debtors to dissipate and allow the trustee and creditors to make rational decisions for the benefit of all creditors.

33.    As a result, the Court should appoint a Chapter 11 trustee under Section 1104(a)(2) of the Bankruptcy Code.

**II.    IN THE ALTERNATIVE, THESE CASES SHOULD BE CONVERTED FOR "CAUSE" TO CHAPTER 7 CASES PURSUANT TO SECTION 1112(B) OF THE BANKRUPTCY CODE.**

34.    Even if the Court declines to appoint a Chapter 11 trustee, the record plainly establishes cause to convert these cases pursuant to Section 1112(b) of the Bankruptcy Code, including Debtors' evident bad faith, gross mismanagement of the Debtors both pre- and post-petition, and Debtors' unauthorized use and diversion of Lender's cash collateral.

**A.    <u>Legal Standards for Dismissal or Conversion.</u>**

35.    Section 1112(b) of the Bankruptcy Code provides "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment … of a trustee or an examiner is in the best interest of creditors and the estate."[3] 11 U.S.C. § 1112(b)(1). Section 1112(b)(1)'s language is "mandatory" and "limit[s] the Court's discretion to refuse to dismiss or convert a Chapter 11 case upon a finding of cause." *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007) (citing Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005)).

---

[3] A request for dismissal under section 1112(b) must be scheduled by the Court no later than thirty days after filing of the motion, and must be decided by the Court no later than fifteen days after commencement of the hearing, unless the movant expressly consents to a continuance for a specific period of time or "compelling circumstances" prevent the Court from meeting the time limits. 11 U.S.C. § 1112(b)(3).

Case 25-16701-nmc   Doc 64   Entered 11/13/25 07:35:56   Page 13 of 16

36.     "Section 1112(b)(4) contains a nonexhaustive list of examples of 'cause' justifying dismissal [or conversion] of a Chapter 11 case." *In re Creekside Senior Apts., L.P.*, 489 B.R. 51, 60 (B.A.P. 6th Cir. 2013); *see also In re Andover Covered Bridge, LLC*, 553 B.R. 162, 172 (B.A.P. 1st Cir. 2016); *In re Jartran, Inc.*, 886 F.2d 859, 867 n.10 (7th Cir. 1989). As this list is not exhaustive, "the court is free to consider other factors as they arise and to use its equitable powers to reach an appropriate result in individual cases." *All Denominational New Church v. Pelofsky (In re All Denominational New Church)*, 268 B.R. 536, 538 (B.A.P. 8th Cir. 2001) (citations omitted).

37.     Further, "[a] Chapter 11 case can be dismissed [or converted] at any time. Creditors need not wait until a debtor proposes a plan or until the debtor's exclusive right to file a plan has expired. . . .." *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994) (citations omitted); *Stage I Land Co. v. U.S. Dept. of H.U.D.*, 71 B.R. 225, 231 (D. Minn. 1986) (affirming dismissal of case at its outset).

38.     "Where a motion to dismiss [or convert] for cause is opposed, the movant bears the burden of providing by a preponderance of the evidence that cause exists for dismissal [or conversion] of the debtor's bankruptcy case. That [movant] bears the burden of persuasion, however, does not eviscerate [debtor's] obligation to produce evidence in opposition to a well-supported motion." *Woodbrook*, 19 F.3d at 317. *See also*, *Andover*, 553 B.R. at 171 ("The initial burden is on the movant to prove there is cause for either conversion or dismissal of the chapter 11 case.")

**B.     Cause Exists for Conversion As a Result of Debtors' Bad Faith.**

39.     "While the Code does not expressly list filing in bad faith as cause for relief or dismissal, the Code's definition of 'cause' is not exhaustive, and courts in this and other circuits have long recognized that bad faith constitutes 'cause' for purposes of dismissal or conversion under section 1112(b) or relief from stay under section 362(d)(1)." *In re 1701 Commerce, LLC*, 477 B.R. 652, 657 (N.D. Tex. 2012); *see also Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828-29 (9th Cir. 1994) (recognizing bad faith as cause for conversion under section 1112(b)); *also In re Sullivan*, 522 B.R. 604, 614 (B.A.P. 9th Cir. 2014) ("Because good faith is required in the

commencement and prosecution of a chapter 11 case, "the lack thereof constitutes 'cause' for dismissal under § 1112(b)(1).") (quoting *In re Mense*, 509 B.R. 269, 276 (Bankr. C.D. Cal. 2014)

40.    Courts have identified a number of non-exclusive factors indicative of a bad faith filing, including:

      a.   the debtor has no employees except for principals;

      b.   the debtor has little or no cash flow;

      c.   the debtor has no income or actual ability to reorganize;

      d.   there are few debts to non-moving creditors

      e.   whether there are allegations of wrongdoing by the debtor or its principals;

      f.   whether the petition was filed on the eve of a foreclosure (or similar relief);

      g.   whether there was no pressure from non-moving creditors;

      h.   whether reorganization essentially involves the resolution of a two-party dispute; and

      i.   whether the debtor filed solely to invoke the automatic stay.

*See In re Ancona*, No. 14-10532, 2016 WL 7868696, at *3 (Bankr. S.D.N.Y. Nov. 30, 2016) (citing *C-TC 9th Ave. Pshp. v. Norton Co. (In re C-TC 9th Ave. Pshp.)*, 113 F.3d 1304, 1311 (2d Cir. 1997); *ECV Dev., LLC v. Emerald Bay Fin., Inc. (In re ECV Dev., LLC)*, No. SC-06-1453-PaMkB, 2007 Bankr. LEXIS 4863, at *28 (B.A.P. 9th Cir. 2007); *In re LBack Dev, LP.*, 2005 WL 3347982 at *1 (Bankr. E.D.Tex. 2005). Bad faith does not depend on the presence of all of these factors. *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986). Instead, "[b]ad faith is determined based on the totality of the circumstances." *Investors Grp., LLC v. Pottorff*, 518 B.R. 380, 382 (N.D. Tex. 2014).

41.    Application of these principles compels the conversion of these Chapter 11 Cases. As set forth in great detail above and in the Cash Collateral Objection, which is incorporated by reference herein, Debtors' bad faith is at the heart of every action, decision, and Event of Default that has brought us to the commencement of these Chapter 11 cases. Accordingly, "cause" exists to convert these Chapter 11 Cases pursuant to §1112(b).

**C.** **Cause Exists for Conversion as a Result of Debtors' Gross Mismanagement and Unauthorized Use of Cash Collateral that is Substantially Harmful to Lender.**

42.    Likewise, based on the same unmistakable mismanagement and *admitted* diversion of Lender's Cash Collateral set forth in the Cash Collateral Objection, and incorporated by reference herein, "cause" also exists to convert these Chapter 11 Cases pursuant to subsections (b)(4)(B) and (b)(4)(D) of section 1112. *See* 11 U.S.C. § 1112(b)(4)(B), (D) ("the term "cause" includes– (B) gross mismanagement of the estate; … (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors"). Lender respectfully submits that, as long as the Debtors remain in possession of their bankruptcy estates, the unauthorized use of Lender's cash collateral will continue unabated. Lender has already been substantially harmed through Debtors' bad faith and, ultimately, fraudulent conduct. Conversion of these cases to Chapter 7 of the Bankruptcy Code, therefore, is necessary as cause under Section 1112(b)(4)(D) has been established.

## RESERVATION OF RIGHTS

43.    Lender expressly reserves all rights to supplement this Motion and present additional evidence or argument following the completion of formal and informal discovery. Nothing contained herein, nor any statements made in support of this Motion, shall be construed as a waiver of Lender's right to rely on any additional facts, documents, or testimony obtained in connection with ongoing or future discovery.

## CONCLUSION

For the foregoing reasons, Lender respectfully requests that this Court enter an order, (i) appointing a Chapter 11 trustee, or in the alternative, (ii) dismissing or converting these cases to Chapter 7, and (ii) granting such other relief as the Court deems just and proper.

Dated: November 12, 2025

Respectfully submitted,

/s/ *Samuel A. Schwartz*
Samuel A. Schwartz (NSBN 10985)
Gabrielle A. Hamm (NSBN 11588)
Athanasios Agelakopoulos (NSBN 14339)
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: (702) 802-2207
saschwartz@nvfirm.com
ghamm@nvfirm.com
aagelakopoulos@nvfirm.com

-and-

Kenneth J. Ottaviano (*pro hac vice* pending)
William J. Dorsey (*pro hac vice* pending)
Stephanie K. Hor-Chen (*pro hac vice* pending)
444 West Lake Street, Suite 1650
Chicago, IL 60606
Telephone: (312) 776-2514
ken.ottaviano@blankrome.com
william.dorsey@blankrome.com
stephanie.horchen@blankrome.com

*Attorneys for Aequum Capital Financial II LLC*